**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE WORKERS UNION (INDEPENDENT) PENSION FUND, and JACK STEWART, Trustee** | ) ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. 04 C 7872** **Magistrate Judge Nan R. Nolan** |
| **EL PASO CGP COMPANY, EL PASO MIDWEST COMPANY, EL PASO CNG COMPANY, L.L.C., AMERICAN NATURAL RESOURCES COMPANY, and ANR ADVANCE HOLDINGS, INC.** | ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM OPINION AND ORDER

This action is brought under ERISA and the MPPAA. Plaintiffs Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund and Jack Stewart, Trustee, (collectively, "The Fund") seek to collect withdrawal liability, interest, and penalties incurred by an employer as a result of a withdrawal from a multi-employer pension plan within the meaning of ERISA. Defendants El Paso CGP Company, El Paso Midwest Company, El Paso CNG Company, L.L.C, and American Natural Gas Corporation ("Defendants") deny that they are liable for withdrawal liability arising from the withdrawal at issue. Discovery disputes have been referred to this Court for ruling. Two motions regarding the proper scope of discovery are before the Court: (1) The Fund's Motion for Protective Order and (2) Defendants' Motion to Compel Responses to Certain Discovery Requests Propounded to Plaintiffs. To the extent stated herein, the Fund's

Motion for Protective Order [24-1] is granted and Defendants' Motion to Compel [35-1] is denied and denied without prejudice as to the Fund's "vague and ambiguous," "unfair inference," and "definition" objections.

## BACKGROUND

ANR Freight System, Inc. ("ANR Freight") was an employer as defined by 29 U.S.C. § 1002(5). On or about April 3, 1995, ANR Freight entered into a collective bargaining agreement ("CBA") with the Chicago Truck Drivers, Helpers and Warehouse Workers' Union (Independent) ("Union"). ANR contributed to the Fund pursuant to its CBA with the Union. On November 2, 1995, The Coastal Corporation owned, directly or indirectly, 100% of the stock of ANR Freight, Coastal Natural Gas Company, American Natural Resources, and ANRFS Holdings, Inc.

On or about August 14, 1995, ANR Advance Holdings was incorporated to facilitate the merger of ANR Freight and Advance Transportation Company. Defs' Answer ¶ 19; Defs' Resp. to Pl's First Set of Requests for Admission of Facts and Genuineness of Documents #1. The Coastal Corporation indirectly owned 50% of the stock of ANR Advance Holdings. Defs' Answer ¶ 19. The other 50% of the stock of ANR Advance Holdings was held by individuals who had been shareholders of Advance Transportation Company. Id. On November 2, 1995, The Coastal Corporation, ANR Freight, Coastal Natural Gas Company, American Natural Resources, ANRFS Holdings (the "Coastal Controlled Group") were an employer for purposes of 29 U.S.C. § 1301(b)(1). Defs' Answer ¶¶ 15, 16. As of November 2, 1995, 100% of the stock of Advance Transportation Company was owned by one or more individuals. Defs' Answer ¶ 18.

On or about November 3, 1995, ANR Freight and Advance Transportation Company merged. The Fund's Cmplt. ¶ 20. The entity resulting from that merger was ANR Advance

Transportation Company, Inc. ("ANR Advance Transportation"). ANR Advance Transportation is a wholly owned subsidiary of ANR Advance Holdings. Id. Neither ANR Freight nor Advance Transportation Company survived the merger. Id. The Coastal Controlled Group did not include ANR Freight on or after November 3, 1995. Defs' Answer ¶ 21.

From November 3, 1995 to at least February 2, 1999, ANR Advance Holdings directly owned 100% of ANR Advance Transportation's stock. Defs' Answer ¶ 22. During that same time period, The Coastal Corporation directly or indirectly owned 100% of the stock of Coastal Natural Gas Company (n/k/a El Paso CNG Company), American Natural Resources, and ANRFS Holdings. Id. ¶ 23. The Coastal Corporation, Coastal Natural Gas Company, American Natural Resources Company and ANRFS Holdings, Inc. remained under common control from November 3, 1995 to at least February 2, 1999. Id. Following the November 3, 1995 merger, ANR Advance Transportation contributed to the Fund in accordance with the terms of the CBA. Id. ¶ 24. ANR Advance Transportation was an employer as defined by 29 U.S.C. § 1002(5).

The Fund alleges that on December 8, 1998, ANR Advance Transportation locked out the employees for whom it had an obligation to contribute to the Fund under the CBA. The Fund's Cmplt. ¶ 25. On February 2, 1999, an involuntary petition in bankruptcy was filed against ANR Advance Transportation. Defs' Answer ¶ 26. The Fund alleges that it determined on or about December 8, 1998 that ANR Advance Transportation permanently ceased to have an obligation to contribute to the Fund and/or permanently ceased making contributions to the Fund, thereby effecting a "complete withdrawal" as defined by 29 U.S.C. § 1383, from the Fund.

On June 3, 1999, the Fund filed a Proof of Claim for withdrawal liability in the ANR Advance Transportation bankruptcy case. In or about January 2001, The Coastal Corporation

changed its name to Defendant El Paso CGP Company. Defs' Answer ¶ 33. On or about October 31, 2002, ANRFS Holdings merged into Defendant El Paso Midwest Company. Id. ¶ 34. Coastal Natural Gas Company changed its name to El Paso CNG Company. Id. ¶ 35. Coastal Natural Gas Company owned 100% of the stock of American Natural Resources Company. Id. After the name change, EL Paso CNG Company owns 100% of the stock of American Natural Resources Company. On or about December 17, 2002, EL Paso CNG Company converted to a Delaware limited liability company named El Paso CNG Company, L.L.C. Id.

Defendants admit that they received actual notice of the Proof of Claim no later than January 1, 2002. The Fund alleges that Defendants did not timely seek plan review under § 1399(b)(2)(A) or initiate arbitration under § 1401(a)(1). As a "prophylactic measure," the Fund issued notices and demands to Defendants on November 18, 2004 for the same withdrawal liability. Defendants requested review on February 15, 2005, are making interim payments, and demanded arbitration on August 3, 2005.

Count I seeks withdrawal liability from Defendants relating to ANR Advance Transportation's alleged withdrawal in December of 1998. Count I alleges that Defendants were employers under common control with the contributing/withdrawing employer at the time of the withdraw because the merger was conducted to evade or avoid withdrawal liability. Therefore, the merger should be disregarded in the collection of withdrawal payments and Defendants are jointly and severally liable to the Fund for the withdrawal liability of ANR Advance Transportation. Count II is an alternative claim against Defendants for interim payments. Counts III and IV were against ANR Advance Holdings, Inc. for defaulted and interim payments of withdrawal liability.

The district court entered a default judgment against ANR Advance Holdings, Inc. on February 15, 2005 under Count III, and Count IV was rendered moot.

## DISCUSSION

The Fund sued Defendants to recover the shortfalls attributable to ANR Advance Transportation's withdrawal from the Fund on or about December 8, 1998. "ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1461, subjects employers who withdraw from a multi-employer pension fund to 'withdrawal liability' equal to its proportionate share of the plan's unfunded vested benefits." Central States, SE & SW Areas Pension Fund v. Neiman, 285 F.3d 587, 594 (7th Cir. 2002). The purpose of withdrawal liability is "to protect the other employers in the multi-employer plan from having to pay for those benefits." Santa Fe Pacific Corp. v. Central States, SE and SW Areas Pension Fund, 22 F.3d 725,727 (7th Cir. 1994).

"Withdrawal liability under ERISA and MPPAA extends beyond the employer that contributed to the plan." Central States, SE and SW Areas Pension Fund v. Art Pape Transfer, Inc., 79 F.3d 651, 652 (7th Cir. 1996). Under the MPPAA, withdrawal liability extends to "all employees of trades or businesses (whether or not incorporated) which are under common control." 29 U.S.C. § 1301(b)(1). There are thus two requirements to establish a single employer: 1) the entities involved must be "trades or businesses," and 2) they must be under "common control." Central States, SE and SW Pension Fund v. Personnel, Inc., 974 F.2d 789, 792 (7th Cir. 1992). Under ERISA, two business organizations are under "common control" if one has a direct or indirect ownership interest of eighty percent or more in the other. 26 C.F.R. section 1.414(c)-

2(b)(2). Here, Defendants dispute that they were under common control with ANR Advance Transportation, the obligated corporation.

To collect withdrawal liability, a plan must "determine the amount of withdrawal liability owed by the withdrawing employer, 29 U.S.C. §§ 1382, 1391, and send the employer a notice and demand for payment of that amount, 29 U.S.C. § 1399(b)(1)." Central States, SE & SW Areas Pension Fund v. Bomar National, Inc., 253 F.3d 1011, 1014 (7th Cir. 2001) (quoting Central States, SE & SW Areas Pension Fund v. Ditello, 974 F.2d 887, 888 (7th Cir. 1992)). The MPPAA provides that any transaction designed to "evade or avoid" withdrawal liability shall be ignored in determining and collecting withdrawal liability: "[i]f a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction." 29 U.S.C. 1392(c). "If the employer wants to contest the assessment he must first complain informally to the plan within 90 days. § 1399(b)(2)(A)." Central States, SE and SW Areas Pension Fund, et al. v. Slotky, 956 F.2d 1369, 1371 (7th Cir. 1992).

> If he obtains no satisfaction from this mandatory conciliation procedure he must initiate arbitration–the method prescribed by the statute for resolving disputes concerning assessments of withdrawal liability–within 60 days after the earlier of either the plan's response to the employer's initial complaint, or 120 days after the employer, as part of the conciliation procedure, requests additional information from the plan regarding the assessment. § 1401(a)(1).

Id. at 1371-72. Section 1401(a)(1) provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration . . . ." 29 U.S.C. § 1401(a)(1); see also Robbins v. Admiral Merchants Motor Freight, Inc., 846 F.2d 1054, 1057 (7th Cir. 1988) (stating

"[v]ery simply, § 1401(a)(1) requires arbitration of any dispute regarding a determination made under §§ 1381-1399.").

Failure to timely request arbitration results in the amount of the withdrawal liability demanded becoming due and owing and the plan can sue to collect. 29 U.S.C. § 1401(b)(1). Section 1401(b)(1) provides: "If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection." See also Slotky, 956 F.2d at 1372 (stating "[s]hould the employer fail to request arbitration within the deadline the amount of withdrawal liability assessed by the plan becomes due and owing and the plan can . . . sue to collect it."). "The resounding message is that . . . the failure to arbitrate will have adverse consequences." Robbins, 846 F.2d at 1056.

With this framework in mind, the Court considers the issues presented by this case. The Fund relies on Section 1392(c) to argue that Defendants are liable for ANR Advance Transportation's withdrawal liability. The Fund argues that the November 3, 1995 merger should be disregarded for purposes of determining and collecting withdrawal liability because a principal purpose of the merger was to evade or avoid withdrawal liability within the meaning of 29 U.S.C. §1392(c). Defendants were once under common control with ANR Freight, the pre-merger contributor that merged with Advance Transportation Company to create ANR Advance Transportation, the post-merger contributor that withdrew. According to the Fund, if a principal purpose of the merger was to evade or avoid withdrawal liability and the merger is disregarded, the pre-merger Coastal Controlled Group, including The Coastal Corporation, Coastal Natural Gas

Company, American Natural Resources Company and ANRFS Holdings, Inc. and ANR Freight, is the employer for purposes of the determination and collection of withdrawal liability. If a principal purpose of the merger was to "evade or avoid" withdrawal liability, then Defendants were still an "employer" at the time of ANR Advance Transportation's withdrawal. The Fund admits that because ANR Freight was not a member of the Coastal Controlled Group after the merger, no Coastal Controlled Group member could be liable for post-merger withdrawal liability incurred by ANR Freight's survivor, ANR Advance Transportation, unless a principal purpose of the merger was to evade or avoid liability.

In Count I, the Fund alleges that Defendants are deemed to have received the Fund's notice and demand for withdrawal liability on June 3, 1999 but did not timely request review or initiate arbitration. The Fund also argues that even if Defendants did not receive notice of the Proof of Claim until no later than January 1, 2002, it is undisputed that they did not informally request review or timely initiate arbitration. By failing to timely initiate the statutory dispute resolution process, Defendants waived their defenses to the plan's determinations and the entire amount of withdrawal liability demanded is due and owing. The Fund alternatively alleges under Count II that Defendants received the Fund's notice and demand on November 19, 2004 and requested arbitration on August 3, 2005. Defendants are required to conduct discovery and depose the Fund in the pending arbitration.

The Fund's protective order motion seeks an order barring Defendants' Rule 30(b)(6) deposition of the Fund. The Fund argues that a protective order barring discovery is appropriate where, as here, an employer has waived its right to dispute a plan's withdrawal liability determinations by failing to initiate the dispute resolution process. The Fund argues that

Defendants seek discovery regarding the plan's determinations through the 30(b)(6) deposition and this evidence is irrelevant in light of their procedural default.

Defendants dispute the Fund's view of their liability and the Fund's view of the proper scope of discovery. Defendants oppose the assessment of withdrawal liability on the ground that they were not an employer within the meaning of the MPPAA at the time ANR Advance Transportation withdrew.[1] Defendants deny that any of them is or was ever a member of a controlled group of corporations that included ANR Advance Transportation and deny that a principal purpose of the 1995 merger was to evade or avoid withdrawal liability. Defendants dispute the Fund's contention that they waived their right to challenge the Fund's determination of withdrawal liability and contend that they are entitled to contest the alleged evade or avoid/controlled group membership determination in the district court. Defendants argue they should be permitted to take discovery on the evade or avoid/controlled group issue, including whether or when the Fund made a determination with respect to that issue and what determination the Fund made.[2]

The parties principally rely on the Seventh Circuit's decisions in Banner Industries, Inc. v. Central States, SE and SW Areas Pension Fund, 875 F.2d 1285 (7th Cir. 1989) and Slotky, 956

---

[1] Defendants point out that none of the Defendants nor any of their predecessors in interest owned more than 50% of the stock of ANR Advance Transportation's parent corporation on the date of the alleged withdrawal or for more than three years preceding that date, which is far less than the 80% necessary for controlled group membership.

[2] The Fund complains that Defendants violated Local 37.2 by failing to confer in good faith prior to seeking court intervention with respect to their Motion to Compel. Because the Court has considered the merits of the Fund's arguments and it has suffered no prejudice from the alleged violation of the meet and confer obligation, the Court exercises its discretion to excuse any non-compliance with Local Rule 37.2. Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir.1995) (stating "decision whether to apply [a local] rule strictly or to overlook any transgression is one left to the district court's discretion.").

F.2d 1369 (7ᵗʰ Cir. 1992). These cases indicate that arbitration is (or was) the appropriate means to resolve the merits of the evade or avoid/controlled group membership issue. In Banner, "the employer which allegedly owed withdrawal liability filed suit in district court seeking a declaratory judgment that it was not liable because it was no longer an 'employer' as defined by ERISA." Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc., 888 F.2d 1161, 1164 (7ᵗʰ Cir. 1989). The Banner court distinguished the issue of whether one remains an employer on the date of the withdrawal from the issue of whether one ever became an MPPAA employer. The court held that the former issue must be arbitrated under the MPPAA. The Banner court observed: "Courts that have resolved employer status questions before arbitration have confronted entities which . . . never had been employers subject to the MPPAA, and which therefore legitimately challenged application of the MPPAA dispute resolution process to them." Id. at 1293.

Defendants attempt to frame the issue here as whether they were ever an employer under the MPPAA by stating that they deny ever being a member of a controlled group of corporations that included ANR Advance Transportation. The issue is not whether Defendants were ever an employer because Defendants admit being controlled group members with a contributing employer prior to the merger and the withdrawal. Defendants claim can only be that by virtue of the merger it ceased to be an MPPAA employer in time to avoid liability for ANR Advance Transportation's withdrawal. Arbitration, not the courts, is the proper forum for the initial resolution of this issue. The Flying Tiger Line v. Teamsters Pension Trust Fund of Phil., 830 F.2d 1241, 1247 (3ʳᵈ Cir. 1987) (holding "where the party against which withdrawal liability is being asserted was certainly a part of the controlled group of an employer subject to the MPPAA *at some point in time*, and

where the issues in dispute fall within the purview of MPPAA provisions that are explicitly designated for arbitration, the Act's dispute resolution procedures must be followed."). Entities that were once under common control with a contributing employer remain subject to the MPPAA's arbitration requirement in an evade or avoid case. Defendants were "certainly part of the controlled group of an employer subject to MPPAA at some point in time" because Defendants admit that they were under common control with ANR Freight, the pre-merger contributing entity that merged with Advance Transportation Company to create ANR Advance Transportation, the post-Merger contributor and withdrawn entity.

As in <u>Banner</u>, Defendants' claim that they ceased to be an MPPAA employer at the time of the withdrawal implicates the issue of whether the merger was designed to evade or avoid withdrawal liability. In other words, Defendants' status as an employer can be decided only by considering whether the merger was designed to evade or avoid withdrawal liability, an issue arising under §§ 1381-1399. The central dispute between the parties is whether the merger must be ignored under section 1392(c). <u>Banner</u> teaches that the question of whether a principal purpose of the merger was to "evade or avoid" withdrawal liability is arbitrable. <u>Banner</u>, 875 F.2d at 1288; <u>see also</u> <u>Flying Tiger Line</u>, 830 F.2d at 1247-48 (holding that the question of employer status arising in the context of a section 1392(c) dispute must be arbitrated).

<u>Slotky</u> does not compel a different result regarding whether arbitration is the proper forum for Defendants to contest membership in the controlled group. Slotky was the sole shareholder of a contributing employer. The employer filed for bankruptcy then withdrew from the plan. The plan filed a proof of claim in the bankruptcy proceeding for withdrawal liability and mailed the employer a notice and demand for withdrawal liability. "The plan never mailed or otherwise

delivered a notice and demand (or a copy of one of the notice and demand it had sent to [to the withdrawing employer]) to Slotky." Slotky, 956 F.2d at 1372. Neither the withdrawing employer nor Slotky initiated arbitration to contest the assessed withdrawal liability. The fund sued Slotky on the theory that Slotky and the withdrawing employer were a single employer for purposes of withdrawal liability. Slotky disputed whether he was a member of the controlled group and specifically whether his act in leasing buildings to the withdrawing employer made him a "trade or business." The Seventh Circuit held that the district court had properly decided whether Slotky was a member of the controlled group despite the fact that he had failed to initiate arbitration.

Slotky does not hold that in all circumstances an alleged controlled group member does not waive his right to contest controlled group membership in the district court by failing to initiate arbitration. Rather, relying on Banner and Flying Tiger, the court found that "the issue of membership in a controlled group cannot be within *exclusive* arbitral jurisdiction." Id. Slotky held that it is proper for the federal district court rather than an arbitrator to determine "some disputes over membership in controlled group." Slotky, 956 F.2d at 1373.

Slotky identified two limited circumstances where courts can decide disputes over controlled group membership despite § 1401(a)(1). The Seventh Circuit was first concerned with the situation where "people who had absolutely no reason to believe that they might by deemed members of a controlled group would be foreclosed from litigating the issue in any forum because they never received notice of their potential liability." Id. at 1373. The court relied on a hypothetical case involving the Easter Bunny to illustrate a type of case where the court may consider the controlled group membership issue despite the failure to commence arbitration:

> [T]he plan could have sued the Easter Bunny and when the Bunny complained that he was not a trade or business under common control with [the withdrawing

employer] could have replied that the Bunny had waived the argument by failing to demand arbitration within the statutory deadline. For of course [the withdrawing employer], never suspecting that the Easter Bunny might be a trade or business under common control with it, would not have forwarded the notice to the Bunny.

Id. at 1372-73. The second circumstance in which the courts can resolve disputes over controlled group membership occurs when the fund does not argue that the alleged control group member that had notice has waived his right to challenge the fund's characterization of him as an employer. Slotky involved this type of situation. The Seventh Circuit held that the district properly resolved a dispute over Slotky's controlled group membership because the plan "appear[ed] to concede" that the district court could consider the issue and the issue is not jurisdictional. Slotky, 956 F.2d at 1373.

Slotky thus confirmed that not all issues concerning controlled group membership are subject to arbitration but warned that "[a]nyone who suspects that he might be adjudged a member of a controlled group and therefore subject to withdrawal liability" will initiate arbitration:

It does not follow that a person can always sit back and wait to be sued for withdrawal liability and take his chances on the court's deciding the issue in his favor. What if the pension plan explicitly notifies the person of his potential liability, rather than notifying another member of the (alleged) controlled group? What if, like Slotky but unlike the Easter Bunny, he knows or should know that he might very well be deemed a member of a controlled group? In both cases it can be argued that the statutory policy of encouraging the prompt, nonjudicial resolution of disputes over withdrawal liability requires the alleged member of a controlled group to institute arbitration on penalty of losing all opportunity to contest his membership.

Slotky, 956 F.2d. at 1373. The Seventh Circuit "assume[d] that if such an arbitration is commenced, the arbitrator can decide the issue of controlled group membership." Id. The dicta in Slotky suggests that if a pension fund asserts waiver, district courts should only consider disputes over membership in controlled groups in cases where arbitration has not been initiated by parties

"who had absolutely no reason to believe that they might be deemed members of a controlled group" because they never received notice of their potential liability. Slotky, 956 F.2d at 1373.[3]

The factual situation in this case is distinguishable from the hypothetical Easter Bunny case and the plan's waiver in Slotky. Defendants clearly do no fall within the Easter Bunny lack of notice exception to mandatory arbitration because Defendants admit having actual notice of the Proof of Claim no later than January 1, 2002. Unlike the plan in Slotky, the Fund has also not made a concession that the district court may properly decide the evade or avoid/controlled group membership dispute. The Fund has made it clear that it believes the question of whether Defendants remained under common control with the withdrawn employer is subject to the mandatory arbitration requirement. Defendants argue that the Fund "affirmatively chose to have the controlled group facts determined by this Court" by alleging that the merger was an "evade or avoid" transaction and commencing this action before Defendants would have been allowed to initiate arbitration under the Fund's 2004 assessment for the same withdrawal liability claim. Defs' Post-Hearing Statement on the Scope of Discovery at 3. Defendants further contend that by alleging in its Complaint that Defendants' status as an employer for purposes of withdrawal liability depends on an evade or avoid theory, Defendants have "ask[ed] for a trial on employer

---

[3] Banner is easily reconciled with Slotky's lack of notice and waiver concerns. Banner held that the issue of whether an entity was ever an employer is properly addressed by the district court prior to arbitration of remaining issues because the requirement that all disputes between the employer and the plan be resolved through arbitration "presupposes a determination that the dispute is with an 'employer.'" Slotky, 956 F.2d at 1372. On the other hand, "where the party against which withdrawal liability is asserted surely had been a part of the controlled group of an employer subject to the MPPAA at some juncture, and where the disputed questions fall within the scope of MPPAA provisions which are explicitly designed for arbitration, the statute's dispute resolution machinery must be invoked." Banner, 875 F.2d at 1292. The potential for an entity to be "foreclosed from litigating the issue [of controlled group membership] in any forum because they had never received notice of their potential liability"–the concern identified by Slotky–is much greater with entities that have never been an employer than entities that were a part of the controlled group of an employer subject to the MPPAA at some point in time. Slotky, 956 F.2d at 1373.

status." Defs' Memo. in Opp. to Pl's Mo. to Quash Subpoena at 2. The Court is not persuaded by these arguments. Defendants have cited no authority for the proposition that a pension fund's allegation that a transaction was an evade or avoid transaction in a withdrawal liability collection case amounts to a concession that the district court rather than an arbitrator should decide the evade or avoid/controlled group membership issue. Defendants have also not presented any reason for concluding that the Fund's simultaneous pursuit of alternative claims regarding the same withdrawal liability constitutes a waiver of the mandatory arbitration requirement.

If the facts of this case ended there, the Court would be inclined to find that Defendants' failure to initiate arbitration based on the Proof of Claim waived all issues that are reserved for arbitration, including the evade or avoid/controlled group membership issue, and the entire amount demanded is due and owing. Defendants' situation, however, presents additional wrinkles. Defendants first challenge the timing of the evade or avoid/controlled group determination and assert that they may only be subject to the MPPAA's dispute resolution process after such a determination has been made.

Defendants suspect that the Fund failed to make an evade or avoid/controlled group membership determination prior to the November 18, 2004 notice and demand. Defendants appear to contend that there must be an actual evade or avoid/controlled group membership determination before a notice of withdrawal liability and demand for payment can trigger the dispute resolution procedure as to those alleged controlled group members. Stated another way, Defendants argue that they cannot be precluded from challenging an evade or avoid/controlled group membership determination that had not been made at the time of the filing of the Proof of Claim based on their failure to contest the Proof of Claim. See August 11, 2005 letter of Thomas Christina at 2 (stating

-15-

"a dispute concerning a determination cannot precede the making of the determination.").

Defendants' argument seems to continue that the question of whether an evade or avoid/controlled

group membership determination was made prior to the filing of the Proof of Claim is for the

district court to decide. Defendants repeatedly fault the Fund for failing to present sufficient

evidence of an evade or avoid/controlled group membership determination associated with the

filing of the Proof of Claim. See Defs' Opp. to Pl's Mo. for Pro. Order at 8 (noting "Plaintiff has

come forward with no evidence whatsoever to demonstrate that the Fund made an evade-or-avoid

determination prior to November 18, 2004 (the date of the notice and demand)). One of defense

counsel's letters to the Fund's counsel explains their position:

> In our conversation on August 9, 2005, I explained that I have seen no evidence
> that your client made a determination on or before June 3, 1999, that the Merger
> was a transaction described in Section 4212(c). . . . To elaborate on this point, the
> Proof of Claim filed in the ANR Bankruptcy proceeding certainly does not state
> that the Merger was an "evade-or-avoid" transaction, nor does it reflect any such
> determination. . . . but at minimum there does not appear to be any basis to
> conclude that your client made a determination on or before June 3, 1999, that the
> Merger was a transaction described in Section 4212(c). In our conversation on
> August 9, 2005, I expressed the hope that, if such a determination had been made,
> you would send me whatever document [of] your client embodies that
> determination. I have not received anything from you in response. In the 30(b)(6)
> deposition of your client, I hope to confirm that if such a determination had been
> made, it would have been reflected in a contemporaneous document.

Pl's Mo. for Pro. Order, Ex 1(F). Defendants thus conclude that the arbitration deadline of §

1401(a)(1) is not applicable to them based on the Proof of Claim raised in Count I "in the absence

of a determination that the corporation or other legal entity is part of the controlled group to which

a notice and demand for payment of withdrawal liability relates." Affidavit of Thomas A.

Christina dated August 22, 2005 at ¶ 12; see also Defs' Opp. to Pl's Mo. for Pro. Order at 6

(stating that in order for the Fund to prevail on Count I, it must demonstrate that the Fund "actually

made a determination" that Defendants are members of ANR Advance Transportation's controlled group).

Nothing in the statue or the case law requires an actual evade or avoid/controlled group determination to start the statute's countdown to arbitration as to potential controlled group members. All the Fund needs to do "to trigger application of the statute [is to] issue a notice, and demand for payment of withdrawal liability to the employer." § 1399(b)." Slotky, 956 F.2d at 1371.[4] The notice and demand for payment of withdrawal liability is the act which activates the running of the MPPAA's dispute resolution procedure. The statutory scheme contemplates notice and the withdrawing employer and actual/potential controlled group members are required to protect against such liability. Once notice is given, the obligation rests with the withdrawing employer and the actual/potential controlled group members to avoid withdrawal liability. "Anyone who suspects that he might be adjudged a member of a controlled group and therefore subject to withdrawal liability would be well advised to commence arbitration, so that if a court holds that he is a member of such a group and hence subject to such liability he won't have waived the issues that are reserved for arbitration." Slotky, 956 F.2d at 1373. Admittedly, the activation of the statute's dispute resolution process based solely on the notice and demand may produce harsh results in actions against a putative member of a controlled group. But remember certain limited exceptions to the mandatory arbitration requirement exist, including the Easter Bunny lack of connection to the fund and lack of notice situation, and the statutory time limits can be tolled in

---

[4] To collect withdrawal liability, a pension plan must first determine the amount of withdrawal liability owed by a withdrawing employer, 29 U.S.C. §§ 1382, 1391, and then issue to the employer a notice and demand for payment of the amount of liability, 29 U.S.C. § 1399(b)(1). With respect to notice, the statute provides that "as soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall: (A) notify the employer of (i) the amount of the liability, and (ii) the schedule for liability payments; and (B) demand payment in accordance with the schedule." 29 U.S.C. § 1399(b)(1).

appropriate circumstances, which can both soften the consequences of that result. There is nothing unreasonable in finding that the commencement of the dispute resolution process as to Defendants, "who had been a part of the controlled group of an employer subject to the MPPAA at some juncture" and had actual notice of the Proof of Claim, does not depend on the existence of an actual determination of the evade or avoid/controlled group membership issue. Banner, 875 F.2d at 1292.

The Fund appears to have followed the correct procedures here (putting aside the issue of whether the Proof of Claim constitutes proper notice and demand under § 1399). The Fund filed a Proof of Claim in the withdrawing employer's bankruptcy case. The Proof of Claim embodies a determination of withdrawal liability pursuant to §§ 1382 and 1391. The filing of the Proof of Claim began the dispute resolution procedure. At that point, if potential controlled group members wanted to contest the assessment of withdrawal liability, they needed to timely initiate the conciliation and arbitration process. Any claim by potential controlled group members that they are exempt from the withdrawal liability assessment concerns a "determination made under sections 1381 through 1399" and must be arbitrated. Defendants had actual notice of the Proof of Claim by January 1, 2002 and did not activate the dispute resolution procedure until February 15, 2005.

An important wrinkle remains regarding whether Defendants waived issues reserved for arbitration. Defendants argue that the attachment to the Proof of Claim reflects a determination that the merger was valid rather than an attempt to evade or avoid withdrawal liability. According to Defendants, the Fund recognized the validity of the 1995 merger by combining the contribution histories of the merged entities in the 1999 withdrawal liability calculations. Defendants thus

assert that the Fund determined that the merger was *not* an evade transaction and the predecessors of the Defendants were *not* members of the relevant controlled group. Defendants conclude that § 1401(a)(1) can not bar them from contesting their membership in the relevant controlled group when the notice and demand is based on a determination that they were not part of the controlled group. At oral argument, defense counsel summarized the argument as follows:

> [T]here was no notice that when it came to be 2004 anyone would retroactively claim that a merger which we knew to be valid and which we thought the Fund had recognized the validity of, was an evade or avoid case and that a determination in 2004 would have the effect of creating a duty in 1999 to commence arbitration . . . .

Transcript dated September 13, 2005 at 33.

Although not explicitly identified as such, Defendants' argument sounds like a type of equitable tolling argument. "[E]quitable tolling means [] that a person is not required to sue within the statutory period if he cannot in the circumstances reasonably be expected to do so." Slotky, 956 F.2d at 1376. The MPPAA's arbitration time limits are subject to equitable tolling. Id. The Third Circuit has stated that equitable tolling of the MPPAA's arbitration time limits may be appropriate where, among other criteria, "the defendant has actively misled the plaintiff respecting the cause of action." Doherty v. Teamsters Pension Trust Fund of Philadelphia and Vicinity, 16 F.3d 1386, 1393 (3rd Cir. 1994).[5]

In Banner, the Seventh Circuit applied equitable tolling to the MPPAA's arbitration requirement because the employer contesting its withdrawal liability had promptly filed an action in federal court to address its employer status. Banner "took the immediate and affirmative steps to contest its liability." Banner, 875 F.2d at 1293. The Banner court emphasized that it was not "a

---

[5] This Court makes no determination regarding whether the Seventh Circuit would apply the same criteria to a request for equitable tolling of the MPPAA arbitration deadlines.

case in which the party assessed did absolutely nothing, waited until the pension filed a collection against it, and then for the first time tried to assert its defenses in court when it should have proceeded to arbitration." Id. at 1293. In another case, the Seventh Circuit allowed the time period for arbitration to be tolled where the employer and the pension fund were disputing the withdrawal liability in bankruptcy. Chicago Truck Drivers v. Central Transport, Inc., 888 F.2d 1161 (7th Cir. 1989).[6]

Perhaps Defendants will argue that they could not reasonably be expected to initiate arbitration based on the Proof of Claim because the attachment to the Proof of Claim reflects a conclusion that the merger was valid rather than an attempt to evade or avoid withdrawal liability. Maybe Defendants were misled by the attachment to the Proof of Claim into believing that they would not be found a member of the controlled group and therefore subject to withdrawal liability. The argument would proceed that Defendants time for commencing arbitration should be tolled until in the exercise of reasonable diligence Defendants should have known that they could be adjudged a member of a controlled group and subject to withdrawal liability. Defendants would argue that when they received the November 18, 2004 Notices and Demands they timely acted to preserve their rights by initiating plan review and arbitration.

The Fund may respond to such an equitable tolling argument by arguing that if Defendants legitimately believed that the Proof of Claim represented a determination that they merger was valid and they would not be subject to withdrawal liability, Defendants should have sought clarification under § 1399(b)(2)(A)(i) of the Fund's bases for liability and/or filed a declaratory

---

[6] Slotky has called in question the continuing validity of these decisions. Slotky, 956 F.2d at 1377 (reading "narrowly" these past decisions finding equitable tolling "as transitional decisions in which uncertainties about the law made judges hesitate to penalize litigants for having made questionable procedural choices.").

judgment action seeking to have the question resolved by a federal court within the time for arbitration. The Fund would likely argue that Defendants took their chances by sitting back and doing nothing. Because Defendants did nothing after having actual notice of the Proof of Claim, they lost the possibility of review and arbitration under the MPPAA. In the end, the question of whether the equities of this case favor such a tolling is for another day. It seems clear, however, under <u>Banner</u> that the district court is the appropriate forum for resolution of the question of whether the MPPAA's arbitration time limits may be equitably tolled based on the Proof of Claim.

A additional caveat applies regarding whether Defendants waived their defenses to withdrawal liability under Count I and the amount demanded is due and owing. Defendants also appear to argue that the Fund failed to meet the notice and demand requirements of 29 U.S.C. § 1399(b)(1). Defendants challenge whether they received proper notice so as to start the countdown for challenges to that liability. Regardless of whether Defendants fall within the controlled group, they claim that the "notice" provided by the Fund was inadequate under ERISA, which would preclude the Fund from relying on the deadline to initiate arbitration. Defendants argue that the Fund's Proof of Claim filed in the ANR Advance Transportation bankruptcy case failed to meet the notice requirements of 29 U.S.C.§ 1399(b)(1). Defendants point out that "[p]roofs of claim in Chapter 7 proceedings are not even served on the debtor. They are simply filed with the Clerk of the Bankruptcy Court . . . . Moreover, they are not a demand for payment (such a demand being expressly prohibited under Bankruptcy law), but are more of an accounting of the claim the creditor alleges it may have against the Bankruptcy Estate, over which the Bankruptcy Trustee (and not the debtor) has control." Defs' Memo. in Opp. to Pl's Mo. for Pro. Order at 9 n.1.

The Fund acknowledges that the district court, rather than an arbitrator, should decide the issue of whether the Proof of Claim satisfied the requirements of § 1399(b)(1) under Count I. <u>See</u> Pl's Memo. in Support of Mo. for Pro. Order at 14 (stating "the only issue in this case is whether a proof of claim filed in a Chapter 7 proceeding satisfies the statutory requirements of § 1399 notice."). Both sides appear to agree that the adequacy of the Fund's proof of claim may properly be resolved by the district court on summary judgment. <u>See</u> Pl's Memo. in Support of Mo. for Pro. Order at 14-15; Defs' Memo. of Law in Opp. to Pl's Mo. for Pro. Order at 12.

## CONCLUSION

As the preceding discussion should make clear, this is an evade or avoid case. The <u>Slotky</u> exceptions to the mandatory dispute resolution procedure and waiver do not apply. Defendants are not entitled to discovery regarding the evade or avoid/controlled group membership issue in this case based on issues raised in the current motions. Defendants may also not discover here whether or when the Fund made an evade or avoid/controlled group determination to support an argument that the lack of such a determination at the time of the Proof of the Claim failed to trigger the statute's dispute resolution process as to Defendants. To avoid liability under Count I, Defendants must establish that some other exception to the mandatory dispute resolution procedure and waiver applies or raise some other relevant defense which is outside the scope of § 1401(a)(1). This Opinion discusses two possibilities, equitable tolling of the dispute resolution process time limits or lack of sufficient notice and demand to start the dispute resolution process. There may be others. If the district court finds grounds to grant a request for equitable tolling with respect to Count I, Defendants may raise their defenses to the withdrawal liability assessment, including defenses to the evade or avoid/controlled group membership issue, in arbitration. If the district

court finds that the Proof of Claim was insufficient to meet the notice and demand requirements of 29 U.S.C. § 1399, then the time for initiating the statutory dispute resolution procedure did not begin to run based on the Proof of Claim and the amount of withdrawal liability assessed is not due and owing under Count I but the merits of Count II should initially be resolved in arbitration.

In light of this Memorandum Opinion and Order clarifying the scope of this lawsuit, the parties shall meet and confer prior to the October 25, 2005 status hearing regarding any outstanding discovery issues. The parties shall file a joint status report regarding the status of any outstanding discovery by October 21, 2005.

**E N T E R:**

*Nan R. Nolan*

_____
**Nan R. Nolan**
**United States Magistrate Judge**

**Dated:  October 18, 2005**