# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE WORKERS UNION (INDEPENDENT) PENSION FUND, and JACK STEWART, Trustee, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04 C 7872 |
| v. | ) | |
| EL PASO CGP COMPANY, EL PASO MIDWEST COMPANY, EL PASO CNG COMPANY, L.L.C., and AMERICAN NATURAL RESOURCES COMPANY | ) | HONORABLE DAVID H. COAR |
| | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund and its Trustee, Jack Stewart (collectively, "Plaintiff" or the "Fund"), filed this action against Defendants El Paso CGP Company, El Paso Midwest Company, El Paso CNG Company, L.L.C., and American Natural Resources Company (collectively "Defendants")[1] to collect withdrawal liability payments allegedly due under the Employee Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendments of 1980 ("MPPAA"), 29 U.S.C. §§1001-1461.

---

[1] This Court entered final (default) judgment in favor of Plaintiff and against a former defendant, ANR Advance Holdings, Inc., on February 15, 2005.

Before this Court are (1) Plaintiff's Motion for Summary Judgment on Count I; (2) Defendants' Motion for Summary Judgment; (3) Plaintiff's Motion to Strike Portions of Defendants' Local Rule 56.1. Statement, Defendant's Local Rule 56.1(b)(3)(B) Statement of Additional Facts, and the underlying affidavits and declarations; and (4) Defendants' Objections to the October 18, 2005 Memorandum Opinion and Order of Magistrate Judge Nan R. Nolan. For the reasons stated below, Plaintiff's motion for summary judgment on Count I is GRANTED. Defendants' motion for summary judgment is DENIED. Plaintiff's motion to strike is GRANTED. Defendants' objections to the magistrate judge's order are OVERRULED.

## I.   SUMMARY JUDGMENT STANDARD[2]

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©).  A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The movant bears the burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 252.  See also Celotex, 477 U.S. at 324.  When reviewing a motion

---

[2]  Although this Court decided the preliminary motions (the motion to strike and the objections to the magistrate judge's order) before considering the motions for summary judgment, it discusses the motions for summary judgment first for clarity's sake.

for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  See Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003).

Where, as here, both parties have moved for summary judgment, each movant must individually satisfy the requirements of Rule 56.  The Court considers the merits of each cross-motion separately and draws all reasonable inferences and resolves all factual uncertainties against the party whose motion is under consideration.  See e.g., Contreras v. City of Chicago, 920 F. Supp. 1370, 1387 (N.D. Ill.1996).

## II.    BACKGROUND ON ERISA

Under ERISA and the MPPAA, an employer that ceases to contribute to a multiemployer pension plan is still liable for its share of vested, unfunded benefits.  29 U.S.C. §§ 1381(a), 1383. This rule protects other employers in the plan from having to pay for those benefits. Accordingly, the pension fund must determine the amount of the withdrawing employer's liability and so notify the employer.  29 U.S.C. § 1382(1)-(2).  All disputes between the employer and the pension fund concerning this determination must be resolved through arbitration.  29 U.S.C. § 1401(a)(1).  If the employer fails to initiate arbitration by the statutory deadline, the amount demanded by the pension fund is deemed to be due and owing.  29 U.S.C. § 1401(b)(1).

Two additional facts about ERISA are relevant to the instant case.  First, ERISA treats employees of trades or businesses that are under common control as a single "employer."  29 U.S.C. § 1301(b)(1).  Second, if a business engages in a transaction (e.g., shifts its assets) to

avoid being treated as an employer under ERISA and thereby avoid withdrawal liability, liability will be determined and collected anyway, without regard to the transaction. 29 U.S.C. § 1392(c).

## III. FACTS[3]

### A. The Parties

Plaintiff Fund is a multiemployer pension plan within the meaning of ERISA, 29 U.S.C. §§ 1002(37), 1301(a)(3). Various employers contribute to the Fund pursuant to negotiated collective bargaining agreements ("CBAs") between the employers and the Chicago Truck Drivers, Helpers and Warehouse Workers' Union (Independent) ("Union"). Income from the contributions is used to provide pension benefits to participants and beneficiaries, and to pay the Fund's administrative expenses.

Defendants are, for the most part, successors to corporations that will be discussed below. Defendants' various name changes occurred after the events complained of here. Specifically, Defendant El Paso CGP Company was until January 30, 2001, the Coastal Corporation ("Coastal"). Defendant El Paso CNG Company, L.L.C. (formerly El Paso CNG Company) was until April 15, 2001, Coastal Natural Gas Company ("Coastal Natural"). Defendant El Paso Midwest Company is the product of an October 31, 2002 merger with ANRFS Holdings, Inc. ("ANRFS Holdings"). The final defendant, American Natural Resources Company ("ANRC"), has not changed its name or merged into another corporation.

_____

[3] Unless otherwise stated, the following facts are undisputed and are taken from the parties' Local Rule 56.1 materials.

## B. Before and After the Merger

ANR Freight System, Inc. ("ANR Freight") was an employer as defined by ERISA. On or about April 3, 1995, ANR Freight entered into a CBA with the Union that required ANR Freight to contribute to the Plaintiff Fund for employees who performed work covered by the CBA.

At that time, Costal was the direct or indirect owner of 100% of the stock of Coastal Natural, ANRC, ANFRS Holdings, and ANR Freight (Defendants' predecessor corporations, as explained above). Specifically, Coastal was the sole stockholder of Coastal Natural, which was the sole stockholder of ANRC, which was the sole stockholder of ANRFS Holdings, which was the sole stockholder of ANR Freight. Thus, Coastal, Coastal Natural, ANRC, ANRFS Holdings, and ANR Freight, and all other trades or businesses under common control with them (collectively "the Coastal Controlled Group"), constituted a single employer within the meaning of ERISA, 29 U.S.C. § 1301(b)(1).

One or more individuals ("Shareholders") owned 100% of the stock of a separate company, Advance Transportation Company ("ATC").

On November 3, 1995, that company—ATC—merged with and into ANR Freight.[4] ANR Freight was the surviving corporation in the Merger. Effective upon the merger, ANR Freight changed its name to ANR Advance Transportation Company, Inc. ("ANR Advance Transportation").[5] Without any colorable basis, Defendants dispute that, following the merger,

---

[4] Defendants dispute this point, but the certificate of merger, articles of merger, and plan of merger make the facts plain.

[5] Also at the time of the merger, ANRFS Holdings, the parent of former defendant ANR Advance Holdings, transferred all of its share of stock in ANR Freight to ANR Advance

ANR Advance Transportation Company (f/k/a ANR Freight) continued to contribute to the Fund, pursuant to the same CBA and for the same employee bargaining-unit, for approximately three years.

### C. The Fund's Request for Withdrawal Liability Payments

On February 2, 1999, an involuntary Chapter 11 bankruptcy petition was filed against ANR Advance Transportation. The bankruptcy was converted to Chapter 7 in March 1999.

Meanwhile, the Fund had determined that on or about December 8, 1998, ANR Advance Transportation permanently ceased making contributions to the Fund. Accordingly, on June 3, 1999, the Fund filed a Proof of Claim in ANR Advance Transportation's bankruptcy proceedings for withdrawal liability in the amount of $1,747,610.30. Defendants El Paso CGP Company, El Paso Midwest Company, ANRC, and El Paso CNG Company had actual knowledge of the Fund's proof of claim between September 1, 2001 and January 1, 2002.

No member of the Coastal Controlled Group, including Coastal, Coastal Natural, ANRC, and ANRFS Holdings, requested review of the Fund's determination within the meaning of ERISA, prior to November 18, 2004. See 29 U.S.C. § 1399(b)(2)(A) (granting the employer 90 days to ask the plan sponsor to review its determination of the employer's liability). Nor did any member of the Coastal Controlled Group initiate arbitration prior to November 18, 2004. In addition, no member of the Coastal Controlled Group made withdrawal liability payments to the Fund prior to December 6, 2004. Similarly, Defendants El Paso CGP Company, El Paso Midwest Company, ANRC, and El Paso CNG Company did not request review or initiate

---

Holdings.

arbitration prior to November 18, 2004.  Nor did they make withdrawal liability payments to the Fund prior to December 6, 2004.

On November 18, 2004, the Fund sent a notice and demand to Defendants in accordance with ERISA, 29 U.S.C. §§ 1382 and 1399(b)(1).  Defendants received the notice and demand on or about November 20, 2004.  The invoice (though Defendants dispute this terminology) attached thereto notified Defendants that they were required to discharge their withdrawal liability (also terminology Defendants dispute) of $1,747,610.03 in a lump sum or in nine quarterly payments of $185,989.00 and one final quarterly payment of $181.200.54.

On February 15, 2005, Defendants requested that the Fund review the withdrawal liability assessment.  This request is the only request the Fund has received with regard to ANR Advance Transportation's complete withdrawal.  Defendants made the first quarterly payment of withdrawal liability required by the Fund's November 18, 2004 schedule (and due on December 1, 2004) on or about February 10, 2005.  The second payment was due March 1, 2005 and Defendants made the payment on or about March 30, 2005.  The third payment was due June 1, 2005; Defendants paid on or about June 24, 2005.  The fourth payment was due September 1, 2005; Defendants paid on or about September 29, 2005.  Defendants demanded arbitration on August 3, 2005.

Court I of the Complaint seeks the entire amount of withdrawal liability, plus interest, statutory liquidated damages, and attorney's fees and costs.  Count II seeks to collect interim withdrawal liability payments, plus interest and penalties which, at the time the Complaint was filed but not at present, were due but not yet paid by Defendants.

## IV.     DISCUSSION

As noted above, ERISA provides that withdrawal liability is "due and owing," 29 U.S.C. § 1401(b)(1), to a multiemployer pension plan when an employer is notified of its assessed liability but fails to timely request review of the assessment or initiate arbitration.  29 U.S.C. §§ 1399(b)(1), 1399(b)(2), 1401(a)(1); Robbins v. Admiral Merchants Motor Freight, Inc., 846 F.2d 1054, 1056-57 (7th Cir. 1988).  Also noted above, trades and businesses under common control are treated as a single employer, and any shift among them effected to avoid withdrawal liability is disregarded.  29 U.S.C. §§ 1301(b)(1), 1392(c).  Thus, to decide the parties' motions for summary judgment, this Court must determine (a) whether the Fund was a multiemployer pension plan and Defendants were an employer for the purposes of ERISA; (b) whether the Fund notified Defendants of their assessed liability; and (c) whether Defendants failed to timely initiate arbitration.


### A.     Was the Fund a multiemployer plan? Were Defendants an employer?

It is undisputed that the Fund constitutes a multiemployer pension plan under ERISA.  It is also undisputed that ANR Freight, which was obligated to contribute to the Fund, and Coastal, Coastal Natural, ANRC, and ANRFS Holdings, which were under common control with ANR Freight, constituted a single employer within the meaning of ERISA.  Members of the Coastal Controlled Group, therefore, are jointly and severally liable for ANR Freight's withdrawal liability, if any.  See Central States, Southeast & Southwest Areas Pension Fund v. Neiman,

285 F.3d 587, 594 (7th Cir. 2002). As successor corporations of the Coastal Controlled Group, Defendants are treated as the persons to whom any withdrawal liability assessed against the Coastal Controlled Group applies. See 29 U.S.C. §§ 1369(b)(1),(3).

The facts further show that ANR Freight merged with ATC, and that ANR Freight was the surviving company renamed, upon the merger, ANR Advance Transportation Company, Inc. (the company that ceased contributing to the Fund). The facts also make clear that the Fund determined that the purpose of this merger was to evade or avoid withdrawal liability. Defendants object that Plaintiff's evade/avoid allegation is false. This objection is irrelevant, as evade and avoid determinations are issues reserved for arbitration. 29 U.S.C. § 1401(a). Since the Plaintiff alleges that the merger was designed to evade or avoid withdrawal liability (an allegation that can be challenged only in arbitration), the merger is disregarded for the purposes of this motion.

Defendants also object that the Fund never alleged it made a *determination* that Defendants' merger was designed to evade withdrawal liability. This argument is spurious. The Complaint clearly states, "[b]ecause a principal purpose of the November 3, 1995 merger . . . was to evade or avoid withdrawal liability, the merger transaction is disregarded for purposes of determining and collecting withdrawal liability." Compl. ¶ 28. Defendants seem to suggest that the word "determination" must appear in the Complaint, or that concrete evidence of such a determination is a prerequisite for summary judgment in Plaintiff's favor. Defendants point to no case law demonstrating either stance as true and, in any event, Defendants' qualms with Plaintiff's determination of withdrawal liability must be arbitrated. Thus, Defendants' associated argument that Banner Industries, Inc. v. Central States Southeast and Southwest Areas

Pension Fund, 875 F.2d 1285 (7th Cir. 1989) (holding that a corporation that divested itself of control of subsidiary prior to subsidiary's withdrawal from pension plan is still subject to the MPPAA's arbitration requirement) does not govern this case is misguided.

Defendants next object that they cannot be liable for ANR Freight's complete withdrawal since "the controlled group membership relevant to this case is determined by the ownership of [ANR Advance] Holdings' stock alone . . . and Plaintiffs have neither alleged nor offered evidence that the 50-50 division of [ANR Advance] Holdings' equity was an 'evade or avoid' transaction." Defs.' Mem. in Support of Its Mot. for Summ. J. at 9. Plaintiff, however, does not have the burden of alleging, much less offering evidence, that the division of ANR Advance Holdings' equity was an evade or avoid transaction. ANR Freight and the November 3, 1995 merger are at issue here, not ANR Advance Holdings and an earlier divestiture of control that did not change the members of the relevant control group. Having alleged that ANR Freight was engaged in a merger to avoid withdrawal liability, Plaintiff has done all it must do to ask the Court to recognize ANR Freight's liability, and the joint and several liability of trades and businesses in common control with it. Similarly, Defendants' argument that the merged entity, ANR Advance Transportation Company, was not identical to the business operated by ANR Freight or Advance Transportation Company, the pre-merger entities, is irrelevant. The statute merely requires that a pension fund allege a merger was effected to avoid withdrawal liability; the statute says nothing about what must be identical.

Finally, Defendants insist that Plaintiff "[has] the burden at trial to prove Defendants were members of ANR Advance's controlled group *at the time of the withdrawal*." Defs.' Mem.

in Opp'n at 1 (emphasis added).[6] This misstates the Court's task on summary judgment. "[T]he question of whether one remains an employer on the date of withdrawal is not identical to the question of whether one ever become an MPPAA employer." Banner Industries, 875 F.2d at 1293. The Seventh Circuit has repeatedly held that the question of whether an entity was ever an MPPAA employer is for the court to determine, while the question of whether an MPPAA employer ceased to be such an employer is for the arbitrator to determine. See Local 705, International Brotherhood of Teamsters Pension Trust Fund v. Packey, Inc., No. 96 C 2330, 1997 WL 724548, at *4 (N.D. Ill. Nov. 10,1997) (Coar, J.) (citing the cases). Cf. Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Incorporated--Pension Fund v. Canny, 900 F. Supp. 583, 593 (N.D.N.Y. 1995) ("After the Court determines that defendants were part of a 'controlled group' at some point prior to the withdrawal, the inquiry [on summary judgment] is complete. Whether the 'controlled group' continued until the date of withdrawal and whether defendants tried to 'evade or avoid' would have been factual matters for an arbitrator, had arbitration been initiated."). Thus, the correct standard dictates that, "where the party against which withdrawal liability is asserted surely *had been a part* of the controlled group of an employer subject to the MPPAA *at some juncture*, and where the disputed questions fall within the scope of MPPAA provisions which are explicitly designated for arbitration, the statute's dispute resolution machinery must be invoked." Banner Industries, 875 F.2d at 1292

---

[6] Hence Defendants dispute the following fact in Plaintiff's Statement of Facts: Prior to November 3, 1995, the Coastal Controlled Group was the "employer" for purposes of the determination and assessment of withdrawal liability under Title IV of ERISA.

(citing with approval <u>Flying Tiger Line v. Teamsters Pension Trust Fund</u>, 830 F.2d 1241, 1247 (3d Cir.1987)) (emphases added).[7]

In <u>Banner Industries</u>, the parent corporation sought a ruling that it was not liable for any of its former, wholly-owned subsidiary's withdrawal liability. The Court ruled that "Banner . . . was admittedly an employer under the MPPAA. The MPPAA requires an employer to arbitrate any challenges to its withdrawal liability. When Commercial withdrew, Banner remained subject to that arbitration requirement even though it had divested itself of control of Commercial prior to Commercials withdrawal." <u>Id</u>. at 1294. Defendants, formerly known as the Coastal Controlled Group, are no different: It is undisputed that the group *was at some juncture* an employer under the MPPAA. When ANR Advance Transportation ceased contributing to the Fund, the Coastal Controlled Group (which was under common control with ANR Freight, the pre-merger entity) remained subject to the MPPAA's arbitration requirement. That Plaintiff, as Defendants argue, can only make this showing by alleging that the November 3, 1995 merger was an evade/avoid transaction is irrelevant. Defendants still had an obligation to invoke the statute's dispute resolution machinery and, through that machinery, contest the Fund's allegation.

---

[7] <u>See also</u> <u>id</u>. (An "employer can be subject to the arbitration provisions of MPPAA even if it arguably was not obligated to contribute to a multiemployer plan during the relevant period for determining withdrawal liability.") (<u>citing with approval</u> <u>ILGWU National Retirement Fund v. Levy Bros. Frocks</u>, 846 F.2d 879, 886 (2d Cir.1988)).

**B.     Did the Fund notify Defendants of their assessed liability?**

To recover withdrawal liability, a pension plan must notify the employer of the amount of liability and the schedule of payments, and demand payment.  29 U.S.C. § 1399(b)(1).  It is undisputed that Plaintiff notified Defendants of the amount of liability via a proof of claim Defendants admit receiving between September 1, 2001 and January 1, 2002.

Defendants argue that this proof of claim is insufficient to satisfy the MPPAA's notice requirement.  The Seventh Circuit has indicated otherwise.  The court observed in Central States, Southeast and Southwest Areas Pension Fund v. Basic American Industries, Inc., 252 F.3d 911, 918 (7th Cir. 2001), that a plaintiff who "had already computed the withdrawal liability and sent notice of the amount, via the proof of claim, to [the defendant] substantially compl[ied] with the statutory requirement for notice of and demand for withdrawal liability."  Accord Central States, Southeast and Southwest Areas Pension Fund v. Koder, 969 F.2d 451, 453 (7th Cir. 1992) (stating that the proof of claim filed in the bankruptcy proceedings "was issued in accordance with ERISA guidelines").  Similarly, the defendant in Central States, Southeast and Southwest Areas Pension Fund v. Slotky, 956 F.2d 1369 (7th Cir. 1992) complained that a proof of claim cannot be treated as a notice and demand because it lacks a schedule of payments.  The Slotky court noted that attaching a payment schedule to a proof of claim to satisfy the MPPAA "would [be] otiose, because the bankruptcy court would inevitably establish its own, supervening schedule for payment of all debts of the bankrupt to all creditors."  Id. at 1375.  Finally, this Court agrees with a district judge's interpretation of Chicago Truck Drivers Union v. Central Transport, Inc., 888 F.2d 1161, 1163-1164 (7th Cir.1989)):

> [I]t appears from Chicago Truck Drivers that a proof of claim filed in a Chapter 11 bankruptcy proceeding satisfies the statutory requirements of 29 U.S.C. § 1399

that the notice contain the amount of liability, a schedule of payments, and demand for payment. A proof of claim in bankruptcy is a demand for payment. The proof of claim here states the total amount claimed to be owed. However, it does not provide a schedule of payments. We do not think this omission renders the notice invalid, since no payments could be scheduled nor would such a schedule have any meaning absent approval of the bankruptcy court.

Central States, Southeast and Southwest Areas Pension Fund v. Superior Moving Services, Inc., No. 89 C 7385, 1997 WL 19890, at *2 (N.D. Ill. Feb. 21, 1990) (internal citation omitted). Thus, because the proof of claim Defendants received constitutes a demand for payment, there is no genuine issue of fact as to whether Plaintiff notified Defendants of their withdrawal liability in accordance with the MPPAA.

Defendants' additional arguments regarding notice do not alter this conclusion. First, Defendants unnecessarily argue that filing a proof of claim is not receipt by the debtor. Plaintiff has not alleged as much and, in any event, Defendants have already admitted receipt of the proof of claim. Second, Defendants argue that if Plaintiff prevails, it would mean that any given recipient of a notice and demand (even an entity who is not an "employer" under the statute) could nonetheless be required to pay withdrawal liability because of a pension plan's mistaken determination as to who is liable. Defendants' argument does not compel judgment in its favor; rather, Defendants have described precisely the way the MPPAA seeks to work. "It is clear that Congress envisioned a 'pay now, dispute later' collection procedure for withdrawal liability." Robbins v. Lady Baltimore Foods, Inc., 868 F.2d 258, 264 (7th Cir. 1989) (internal quotation marks omitted). An employer may contest any assessment made by a pension fund, but to ensure that the fund can pay its obligations in the meantime, the employer must pay interim withdrawal liability payments until an arbitrator reaches a final decision. See Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc., 204 F.3d 736, 739 (7th Cir. 2000). In

operating this way, the MPPAA does not run afoul of the Constitution, Defendants' final

argument.  See, e.g., Central States, Southeast and Southwest Areas Pension Fund v. Midwest

Motor Express, Inc., 181 F.3d 799, 806 (7th Cir. 1999) (explaining that "the Supreme Court has

repeatedly held that the MPPAA is constitutional on its face").


**C.      Did Defendants fail to timely initiate arbitration?**

Within 90 days after receiving the notice and demand, the employer may request that the

pension plan review its determination.  29 U.S.C. § 1399(b)(2)(A).  After a reasonable review,

the plan must notify the employer of its decision.  29 U.S.C. § 1399(b)(2)(B).  If the employer

disagrees with that decision, it must initiate arbitration within 60 days after the earlier of (a) the

date it is notified of the decision or (b) 120 days after its request for review.  29 U.S.C. §

1401(a)(1).  See also Chicago Truck Drivers, Helpers and Warehouse Workers Union

(Independent) Pension Fund, v. Louis Zahn Drug Co., 890 F2d 1405, 1406 (7th Cir. 1989).

Defendants, having been notified of their withdrawal liability via a proof of claim on

January 1, 2002, were to request review of the Fund's determination within 90 days, or by early

April 2002.  It is undisputed, however, that Defendants did not request review until February 15,

2004.  Assuming *arguendo*, that the Fund did not respond to this request (had it been made),

Defendants were to then initiate arbitration within 120 days of its request (again, had they made

such a request).  This deadline for initiating arbitration would have been during early July 2002.

It is undisputed that Defendants did not demand arbitration until August 3, 2005.  Thus, there is

no genuine issue of fact as to whether Defendants failed to initiate arbitration within the statutory

deadline. The amount of withdrawal liability demanded by the Fund was already "due and owing" by mid-2002. 29 U.S.C. § 1401(b)(1).

Defendants argue that the matter is not this simple. They contend that failing to initiate arbitration did not result in a wavier of their right to contest their membership in the relevant controlled group. Defendants' parade of citations to cases about common law waiver do nothing to diminish the clarity of MPPAA case law on this issue: Defendants have waived any issue reserved for arbitration when it failed to initiate arbitration. See, e.g., Robbins v. Chipman Trucking, Inc., 866 F.2d 899, 900 (7th Cir. 1988) (affirming district court ruling that "Chipman did not initiate timely arbitration, so . . . it waived its right to contest the withdrawal liability."); Admiral Merchants, 846 F.2d at 1056 ("The resounding message is that arbitration is the preferred method for resolving pension plan disputes and that failure to arbitrate will have adverse consequences.").

In Slotky, the Seventh Circuit warned:

> Anyone who suspects that he might be adjudged a member of a controlled group and therefore subjected to withdrawal liability would be well advised to commence arbitration, so that if a court holds that he is a member of such a group and hence is subject to such liability he won't have waived the issues that are reserved for arbitration, as [the plaintiff] did here.

956 F.2d at 1373. The defendant in Slotky behaved exactly as Defendants did in the instant case: He received notice of his liability, failed to timely initiate arbitration, and then sought to contest his membership in the controlled group in district court. Although the Slotky court observed that "the issue of membership in a controlled group cannot be within *exclusive* arbitral jurisdiction," the observation applied to "people who had absolutely no reason to believe that they might be deemed members of a controlled group." Id. The defendant in Slotky did not fall

within this category and neither do Defendants in the instant case: Both had either explicit notification of their potential liability or a reasonable suspicion that they might be deemed a member of the controlled group. See id. In these types of cases, wrote the Slotky court, "the statutory policy of encouraging the prompt, nonjudicial resolution of disputes over withdrawal liability requires the alleged member of a controlled group to institute arbitration on penalty of losing all opportunity to contest his membership." Id.

Defendants also argue that if an issue that falls outside the range of provisions for which arbitration is mandated, namely 29 U.S.C. § §1381-1399, they have not waived the right to contest the issue. In Defendants' view, the contested issue is whether ANR Freight and ANR Advance Transportation Company are under common control--an issue about "employer" status arising under 29 U.S.C. § 1301(b)(1). This is the same argument made by the employer and rejected by the court in Flying Tiger Line, a Third Circuit case the Seventh Circuit discussed approvingly in Banner Industries. See Banner Industries, 875 F.2d at 1292-93. In short, Defendants ignore that the only means by which Plaintiff was able to assess liability upon ANR Freight's predecessor corporation and those businesses under common control with it, is by declaring the November 3, 1995 merger an evade or avoid transaction. This issue arises under 29 U.S.C. § 1392(c) and is an issue that must be arbitrated. Accord id., 875 F.2d at 1292 (noting that "whether an entity is an employer subject to the MPPAA [is] an issue arising in the "evade or avoid" context of § 1392(c)").

Defendants' argument that preventing them from contesting their controlled group membership would violate due process also fails. First, as noted earlier, courts have rejected due process challenges to the MPPAA. See, e.g., Peick v. Pension Benefit Guaranty Corp., 724 F.2d

1247, 1277 (7th Cir. 1983) (holding that the mandatory arbitration provisions of the MPPAA do not infringe upon constitutional rights). Second, Defendants' due process argument is based on its wish to contest membership in the controlled group *at the time of withdrawal* which, as noted earlier, is not the relevant test on summary judgment.


      **D.**      **Judicial Estoppel**

Defendants' final argument for summary judgment in its favor is that the doctrine of judicial estoppel bars Count II of the Complaint. According to Defendants, Plaintiff was granted default judgment against ANR Advance Holdings, Inc. for the entire amount of the withdrawal liability, but failed to credit ANR Advance Holdings, Inc. with a February 2005 interim payment made by Defendants. Now, Defendants argue, Plaintiff seeks a judgment based on the theory that ANR Advance Holdings, Inc. and Defendants are in the same controlled group.

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). None of the factors that typically inform the decision to apply judicial estoppel are present in the instant case. First, a party's later position must be "clearly inconsistent" with its earlier position. Id. at 750. Second, courts inquire whether the party has successfully persuaded a court to accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would "create the perception that either the first or the second court was misled." Id. at 750-51 (internal quotation marks omitted). Third, courts consider whether the party seeking to assert an inconsistent position

would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  Id. at 751.

Regarding the first factor, throughout this litigation, Plaintiff has contended that Defendants are trades and businesses under common control and are therefore jointly and severally liable for the unpaid withdrawal liability.  Given this, seeking a judgment against a defendant in default is not inconsistent with seeking judgment as a matter of law against the remaining defendants.  Furthermore, failing to deduct Defendants' interim payment from the total amount of withdrawal liability demanded is not inconsistent.  Interim payments are interim, as in "not final."  ERISA provides for adjustments (i.e., refunds) if the money is later determined not to be due.  See 29 U.S.C. § 1401(d).  See also Hunt Truck Lines, 204 F.3d at 739 ("Under [the MPPAA's] 'pay now, dispute later' scheme, if the employer wins it recovers its interim payments; if not, the fund collects the remainder of the withdrawal liability.").

Because this Court has concluded that Plaintiff is not asserting an inconsistent position, the second or third factor cannot be met.  Accordingly, Defendants' judicial estoppel argument fails.

### E.    Accelerated Liability and Interests, Statutory Damages, and Fees

Because no issue of material fact exists as to whether Defendants were, at some point, an employer for the purposes of the MPPAA, whether Plaintiff notified Defendants of their withdrawal liability in accordance with the statute, or whether Defendants failed to timely initiate arbitration, Plaintiff's motion for summary judgment as to Count I is granted and Defendants' motion for summary judgment is denied.   There are no remaining counts in this

action since favorable judgment as to Count I renders Count II moot.  Also, this Court merely

has decided that Defendants failed to timely initiate arbitration.  It is expressing no judgment

about the outcome of the arbitration that is currently pending.

Plaintiff is entitled to accelerate any debt owed by Defendants.  See Basic American, 252

at 918 (noting that, even where bankruptcy proceedings are involved, the MPPAA "does not

prevent the fund from accelerating all future payments upon default, thus making all the

installments due at once"); Chicago Truck Drivers, Helpers and Warehouse Union (Independent)

Pension v. Century Motor Freight, Inc., 125 F.3d 526, 534 (7th Cir. 1997) (deciding a pension

fund's right to an accelerated payment upon employer's default and failure to initiate

arbitration).  Moreover, Plaintiff is entitled to interest on the unpaid contributions, liquidated

damages, and reasonable attorney's fees and costs.  See 29 U.S.C. § 1132(g)(2); Slotky, 956 F.3d

at 1377 (declaring that interest, liquidated damages, and attorney's fees are "mandatory add-ons"

in successful suits to enforce the MPPAA).  Before concluding, however, this Court must discuss

the parties' preliminary motions.


## V.    PLAINTIFF'S MOTION TO STRIKE

Plaintiff moves to strike portions of Defendants' Local Rule 56.1 Statement, Defendants'

Local Rule 56.1(b)(3)(B) Statement of Additional Facts, and the underlying affidavits and

declarations.

Plaintiff claims that, in these statements, Defendants have asserted facts on which

discovery was barred by Magistrate Judge Nolan's October 18, 2005 Memorandum Opinion and

Order.  As review: Defendants contend that they are not members of the withdrawing employer's

"controlled group" and, thus, they are not jointly and severally liable for the unpaid withdrawal liability. Plaintiff contends the opposite, since, according to Plaintiff, Defendants engaged in a merger designed to evade or avoid any withdrawal liability. Because, under the MPPAA, the issue of whether the principal purpose of a merger was to evade or avoid withdrawal liability is reserved for arbitration, Judge Nolan decided:

> Defendants are not entitled to discovery regarding the evade or avoid/controlled group membership issue . . . . Defendants may also not discover here whether or when the Fund made an evade or avoid/controlled group determination to support an argument that the lack of such a determination at the time of the Proof of the Claim failed to trigger the statute's dispute resolution process as to Defendants.

Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. El Paso CGP Company, No. 04 C 7872, at 22 (N.D. Ill. Oct. 18, 2005) (order granting Plaintiff's motion for protective order and denying Defendants' motion to compel).

For the reasons discussed earlier, Judge Nolan was right: Discussion about whether the merger in question was undertaken to evade or avoid withdrawal liability is relevant in the arbitration setting but irrelevant to the issues before this Court. Accordingly, Defendants' Statement of Facts #23-36, which pertain to the merits of the merger, are irrelevant and have not been considered.[8] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted" on summary judgment); Malec v. Sanford, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("[T]he 56.1(a) statement should be limited to material facts, that is, facts pertinent to the outcome of the issues identified in the summary

---

[8] Defendants' Statement of Facts 23-36 are grouped under the headings "ANR Freight's Pre-Merger Operations" and "The Merger Decision."

judgment motion.).  The portions of the affidavits and declarations submitted in support of these irrelevant factual assertions also have been disregarded.[9]

Similarly, whether or not an employer properly suspends contributions to a pension fund during a labor dispute involving its employees must be arbitrated.  See 29 U.S.C. § 1401(a) (mandating arbitration for determinations made under sections 1381 through 1399 of the statute); 29 U.S.C. § 1398 (stating that an employer will not be considered to have withdrawn from a plan solely because it suspends contributions during a labor dispute).  Since Defendants' Statement of Facts #52-56 (with the exception of the second sentence of #55) concern their labor negotiations and a strike–issues reserved for arbitration–they are also irrelevant to the issues before this Court and have been disregarded.[10]  The portions of the affidavits and declarations submitted in support of these irrelevant factual assertions also have been disregarded.[11]

Among the discovery Judge Nolan denied were four of Defendants' First Requests for Admissions.  Those requests (#6, #13, #14, and #15) concerned, for the most part, Plaintiff's determination that the principal purpose of the merger was to evade or avoid withdrawal liability.  As Plaintiff correctly notes, Defendants' Statement of Facts #63-67 merely consolidate and rehash the admissions Judge Nolan barred Defendants from trying to obtain during discovery.  Accordingly, these facts are stricken.  That these facts are irrelevant is also evidenced

_____

[9] These are the Affidavit of Larry Jouett ("Jouett aff."), ¶¶ 4-6, 8-16; the Declaration of David Arledge ("Arledge decl."), ¶¶ 3, 4, 7, 12-19; and the Affidavit of Stephen R. McKemy ("McKemy aff."), ¶¶ 8-11.

[10] It is clear that these facts (with the exception of #55) are not material since Defendants' brief neither cites nor discusses them.  See Malec, 191 F.R.D. at 585 (stating that "56.1 statements do not abrogate a party's obligation to recite its version of the facts in its supporting memorandum").

[11] These are the Jouett aff. ¶¶ 9-22 and the Arledge decl. ¶¶ 25-28.

by Defendants' brief in support of its motion for summary judgment, which neither cites nor discusses these five facts.  See supra note 4.

Plaintiff also claims that the two affidavits and one declaration underlying Defendants' summary judgment papers are insufficient under the Federal Rules of Civil Procedure for a number of reasons, including lack of personal knowledge, speculation, conjecture, opinion, and hearsay.  As noted above, large portions of each affidavit are irrelevant because they discuss issues reserved for arbitration and thus would be inadmissible at trial.[12]  The Court need not decide whether the affidavits are also inadmissible because they contain speculation, opinion, hearsay, and the like.

Finally, Plaintiff moves to strike Attachment C of Stephen R. McKemy's affidavit (referred to as Attachment B in the affidavit itself) because it is not authenticated.  Attachment C is a letter from the Fund responding to McKemy's request for information related to ANR Freight's potential withdrawal liability.  The attachment demonstrates McKemy's awareness of the possibility of withdrawal liability.  Plaintiff protests that, "as the mere recipient, McKemy lacks personal knowledge about the creation of the March 27, 1998 letter."  Pl.'s Mem. in Support of Mot. to Strike at 11.  The Court, however, already has disregarded the portion of the affidavit that Attachment C supports (¶ 13).  Accordingly, Attachment C is irrelevant and likewise has been disregarded.

For these reasons, Plaintiff's motion to strike portions of Defendants' 56.1 Statements and the underlying affidavits and declarations is granted.

---

[12]  These are Jouett aff. ¶¶ 4-18, 19-23; Arledge decl. ¶¶ 14-24, 25-29; and McKemy aff. ¶¶ 8-16.

## VI.   DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER

Defendants have requested that this Court vacate the October 18, 2005 Memorandum Opinion and Order of Magistrate Judge Nolan granting Plaintiff's Motion for Protective Order and denying Defendants' Motion to Compel Discovery.  Defendants contend that Judge Nolan's determinations of fact and law are clearly erroneous or contrary to law.

Defendants objections are overruled and their request to vacate is denied.  Because Defendants restate many of their objections as arguments for summary judgment, which the Court has addressed already, the Court will not repeat those objections here.  An objection not reviewed above, however, is Defendants' insistence that Plaintiff "changed" its theory of the case.  According to Defendants,  Plaintiff represented to the Magistrate Judge that the instant case was an "evade or avoid case" (i.e., a case to determine whether Defendants engaged in a transaction to avoid withdrawal liability) not an "employer case" (i.e., a case to determine whether Defendants were an employer within the meaning of the MPPAA).  The Magistrate Judge then limited discovery because evade/avoid issues are arbitrable.  Now that the "danger of discovery [is] past," Defendants argue, Plaintiff has presented a motion for summary judgment that is not based upon the evade/avoid allegation in its complaint or any other allegation regarding the merger.  Mem. in Support of Defs.' Objections at 4.

Defendants' attack lacks good faith.  Plaintiff's complaint alleges that, because a principal purpose of Defendants' merger was to avoid withdrawal liability, Defendants are jointly and severally liable for ANR Advance Transportation's unpaid withdrawal liability. Plaintiff's summary judgment motion follows, not abandons, these allegations.  Moreover, Defendants are wrong to suggest that Plaintiff has been duplicitous in claiming an evade/avoid

case and then an employer case: "Whether an entity is an employer subject to the MPPAA [is] an issue *arising in* the 'evade or avoid' context of § 1392(c)." Banner Industries, Inc. v. Central States, Southeast and Southwest Areas Pension Fund, 875 F.2d 1285, 1292 (7th Cir. 1989) (emphasis added). Finally, Plaintiff is correct in not asking this Court to rule upon the merits of the evade or avoid allegation, as that issue is reserved for arbitration. The Court overrules Defendants' objections.

## VII.  CONCLUSION

For the foregoing reasons, Defendants' objections to the magistrate judge's order are OVERRULED. Plaintiff's motion to strike is GRANTED. Plaintiff's motion for summary judgment on Count I is GRANTED. Defendants' motion for summary judgment is DENIED.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **April 17, 2006**