**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE WORKERS UNION (INDEPENDENT) PENSION FUND, and JACK STEWART, Trustee, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | No.  04 C 7872 |
| v. | ) | |
| EL PASO CGP COMPANY, EL PASO MIDWEST COMPANY, EL PASO CNG COMPANY, L.L.C., and AMERICAN NATURAL RESOURCES COMPANY | ) ) ) ) ) | HONORABLE DAVID H. COAR |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

This is an action to collect withdrawal liability payments due under the under the Employee Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendments of 1980 ("MPPAA"), 29 U.S.C. §§1001-1461.  In an order dated April 17, 2006, this Court granted summary judgment in favor of Chicago Truck Drivers, Helpers, and Warehouse Workers Union (Independent) Pension Fund and Jack Stewart, Trustee (collectively "Plaintiff") and against El Paso CGP Company, El Paso Midwest Company, El Paso CNG Company, L.L.C., and American Natural Resources Company (collectively "Defendants"). Plaintiff now moves for entry of judgment amounts pursuant to ERISA, 29 U.S.C. § 1132(g). Because this Court agrees with Defendants that Plaintiff's calculation of the judgment amount is based on an erroneous application of the law, Plaintiff's motion is DENIED.

-1-

## I. BACKGROUND

Defendants owe $1,747,610.00 in unpaid contributions, as well as interest on the unpaid contributions, liquidated damages, and attorneys' fees and costs. See ERISA, 29 U.S.C. § 1132(g)(2). To date, Plaintiff has received $1,227,695.83 from Defendants, which Plaintiff has applied first toward accrued interest, and then toward principal. Accordingly, Plaintiff seeks from Defendants the remainder of the principal amount, which Plaintiff calculates to be $1,238,829.71; prejudgment interest that Plaintiff has calculated in the amount of $12,753.44 (if interest has accrued since June 3, 1999) or $8,567.10 (if interest has accrued since April 1, 2002); and liquidated damages that Plaintiff has calculated in the amount of $349,522.00. Plaintiff intends to move for attorneys' fees and costs upon entry of judgment in this case.

## II. DISCUSSION

Defendants oppose the motion for entry of judgment on the grounds that Plaintiff's calculations are based on erroneous application of law. This Court takes Defendants' two, specific protests in turn.

### A. Date From Which Interest Accrues

Defendants oppose Plaintiff's assessment that interest is due on the withdrawal liability from June 3, 1999, the date that Plaintiff filed its proof of claim in the underlying bankruptcy. Plaintiff acknowledges that the question of when interest begins to run "may not be well-settled." Pl.'s Mot. at 3. Plaintiff, therefore, suggests two points from which interest might commence: (1) June 3, 1999, the date that Plaintiff filed its proof of claim (Plaintiff's preference) or (2) April 1, 2002, ninety days after January 1, 2002, when Defendants obtained actual notice of Plaintiff's

proof of claim. This Court's reading of the statute, however, yields the conclusion that neither date suggested by Plaintiff is correct.

First, however, this Court must address the issue of acceleration, which arises in the context of overdue and defaulted withdrawal liability payments. The ERISA regulations governing interest on overdue, defaulted and overpaid withdrawal liability provide that "a withdrawal liability payment is overdue if it is not paid on the date set forth in the schedule of payments established by the plan sponsor." 29 C.F.R. § 4219.31(a). If payments are overdue, "[t]he plan sponsor of a multiemployer plan . . . [s]hall assess interest on overdue withdrawal liability payments from the due date . . . until the date paid . . . ." 29 C.F.R. § 4219.32(a)(1). The *due date* from which interest accrues is defined as "the date of the missed payment that gave rise to the delinquency or the default." 29 C.F.R. § 4219.32(d). The *date paid* is defined as "the date on which [a payment of withdrawal liability] is received." 29 C.F.R. § 4219.32(e).

Unless otherwise described by a plan sponsor's rules, *default* occurs when an employer fails "to make, when due, any payment . . . if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure." 29 U.S.C. § 1399(c)(5)(A); see also 29 C.F.R. § 4219.31(b)(1) (providing that default is the "failure of any employer to pay any overdue withdrawal liability payment within 60 days after the employer receives written notification from the plan sponsor that the payment is overdue."). "In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5); see also 29 C.F.R. § 4219.31(b)(2) ("In the event of a default, a plan sponsor may require immediate payment of all or a portion of the outstanding amount of an employer's withdrawal liability, plus interest."); 29

C.F.R. § 4219.32(a)(2) (providing that in "the event of a default, [the plan sponsor] may assess interest on any accelerated portion of the outstanding withdrawal liability from the due date . . . until the date paid"). This is known as acceleration.

This Court indicated in its Order of April 17, 2006 that Plaintiff was entitled to accelerate any debt owed by Defendants. See Order at 20. While true, acceleration depends upon *default*, a fact noted by a case this Court cited in its Order. See id. (citing Central States, Southeast and Southwest Areas Pension Fund v. Basic American Industries, Inc., 252 F.3d 911, 918 (7th Cir. 2001) (noting that, even where bankruptcy proceedings are involved, the MPPAA "does not prevent the fund from accelerating all future payments upon default, thus making all the installments due at once"); see also 29 C.F.R. § 4219.31(b)(2). As explained above, default occurs when an employer fails to make a withdrawal liability payment in accordance with the schedule of payments, receives written notification about its failure to pay from the plan sponsor, and persists in failing to pay for sixty days. See 29 C.F.R. § 4219.31(b)(1).

On the facts presented here, there has been no default within the meaning of the statute. This is why: The relevant schedule of payments in this case was given by Plaintiff to Defendants on November 18, 2004, when Plaintiff sent them notice and demand for payment based on the June 3, 1999 proof of claim. As explained in this Court's previous order: "On November 18, 2004, the Fund sent a notice and demand to Defendants in accordance with ERISA, 29 U.S.C. §§ 1382 and 1399(b)(1). Defendants received the notice and demand on or about November 20, 2004. The invoice . . . attached thereto notified Defendants that they were required to discharge their withdrawal liability . . . of $1,747,610.03 in a lump sum or in nine quarterly payments of $185,989.00 and one final quarterly payment of $181.200.54." Order at 7. According to the schedule, the first payment was due on December 1, 2004. Defendants, however, made the

-4-

payment on or about February 10, 2005.  While it is true that Defendants did not make the first payment within sixty days of its due date, Plaintiff has not produced evidence that, after Defendants failed to make this or any other withdrawal liability payment according to the schedule, (1) Plaintiff notified Defendants in writing (as was Plaintiff's right under the statute) and (2) Defendants continued in failing to pay for at least sixty days after receiving that written notice.  Without evidence of these two occurrences, there has been no default within the meaning of the statute.  Without such default, Plaintiff was not entitled to accelerate Defendants' debt.[1]

Stated otherwise, acceleration is an option Plaintiff *could have* exercised, had there been proper default—something that requires a notice from the pension plan to the employer that the employer does not heed.  See Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc., 552 U.S. 192, 202 (1997) (stating that "a plan has the option to accelerate and collect the entire debt if the employer defaults").  Here, there was no default and therefore no possibility for Plaintiff to accelerate Defendants debt.  Moreover, there is no evidence that Plaintiff even *sought* to accelerate Defendants' debt.  Plaintiff has not identified any point (aside from the instant motion) at which it told Defendants that their entire withdrawal liability—the sum of Defendants' ten quarterly payments—was due *at once* on June 3, 1999 or April 1, 2002 or any other date.  The only (and, thus, the only controlling) schedule in this case indicates that, upon withdrawal, Defendants owed nine quarterly payments of $185,989.00 and a final quarterly payment of $181.200.54.  Thus, one error in the calculations underlying Plaintiff's Motion for Entry of Judgment is Plaintiff's reliance on "the accelerated amount" of withdrawal liability.  See,

---

[1] It now seems this Court would have done well to leave all mention of "acceleration" out of the Order dated April 17, 2006.

e.g., Pl.'s Mot. at 4. Plaintiff did not accelerate, and could not have accelerated (unless it provided the notice described above), Defendants' withdrawal liability.

Plaintiff also erred in calculating interest from June 3, 1999 or, in the alternative, April 1, 2002. In general, interest on withdrawal liability payments that are amortized (i.e., calculated and then made payable in installments such as quarterly, as in the instant case) begins to accrue on the first day of the year following withdrawal (here, the year is 1999). See Milwaukee Brewery Workers' Pension Plan v. Jos. Schultz Brewing Co., 513 U.S. 414, 431 (1995).

As noted above, ERISA provides that interest on *overdue* withdrawal liability payments accrues "from the due date . . . until the date paid." 29 C.F.R. § 4219.32(a)(1). Thus, Defendants are responsible for interest on their first overdue quarterly payment from the date due (December 1, 2004) until the date Defendants paid (February 10, 2004). Defendants are responsible for the interest on their second quarterly payment from the date due (March 1, 2005) until the date paid (March 30, 2005). Likewise, Defendants are responsible for the interest on their third quarterly payment from the date due (June 1, 2005) until the date paid (June 24, 2005), and their fourth payment quarterly payment from the date due (September 1, 2005) until the date paid (September 29, 2005).[2] Absent acceleration (which, as previously established, did not take place here), Defendants are not responsible for accrued interest on the entire amount of their withdrawal liability.

This Court's conclusion finds support in Chicago Truck Drivers, Helpers and Warehouse Union (Independent) Pension Fund v. Century Motor Freight, Inc., 125 F.3d 526, 535 (7th Cir. 1997):

---

[2] Plaintiff acknowledges this method of calculation in the motion, but does not use it. See Pl.'s Mot. at 6-7.

> We . . . agree with Century that its interest and liquidated damages liability should not be based on the entire accelerated assessment made by the district court. Century was obligated only to make installment payments prior to arbitration, and its penalties under 29 U.S.C. § 1132(g)(2) should derive from those missed payments. Therefore, Century's interest liability accrues from the due date of each missed installment payment, and any liability for liquidated damages (either double interest or up to 20% of unpaid contributions, whichever is greater) should relate only to missed installment payments as well.

Basic American, the case on which Plaintiff relies, does not support Plaintiff's conclusion that interest accrues on the total amount of withdrawal liability from the date Plaintiff filed its proof of claim or ninety days after Defendants received actual notice of the proof of claim. The task in Basic American was very different from the task in the instant case. The Basic American court had to determine when the six-year statute of limitations on a plan sponsor's ability to sue a withdrawing employer began to run. The court defined "default," but in the context of the statute of limitations question it was considering. See Basic American, 252 F.3d at 915. The statute itself defines "default" in the context relevant here—the calculation of interest on unpaid withdrawal liability and the right, if any, to accelerate the payment of that liability.

In sum, Plaintiff's motion for entry of judgment is denied because neither date from which Plaintiff calculates interest is supported by the statute.

### B. Proper Application of Defendants' Prior Payments

Defendants also oppose Plaintiff's practice of applying Defendants' payments thus far to the interest as accrued since June 3, 1999 first, before applying the payments to the principal due. Defendants argue that there is no basis in the statute or under common law—in the very least, no basis suggested by Plaintiff—for Plaintiff's practice.

More importantly, Defendants suggest that Plaintiff's practice is contrary to ERISA regulations. This Court finds merit in the argument. Interest, Defendants correctly note, is assessed on withdrawal liability payments from the date due until the date paid. See 29 C.F.R. § 4219.32(a)(1). The date paid is defined as "the date on which [a payment of withdrawal liability] is received." 29 C.F.R. § 4219.32(e). Simply stated, the date paid is the date received.

Plaintiff admits receiving several "payment[s] of withdrawal liability" from Defendants. See, e.g., Pl.'s L.R. 56.1 Statement ¶¶ 59, 61, 63, 65 (stating that Defendants "made the first [second, third, and fourth] quarterly payment of withdrawal liability"). Each date on which Plaintiff admits receiving Defendants' payments is, according to the statute, the date Defendants "paid" the particular quarterly withdrawal liability payment. No interest, therefore, can be charged once those quarterly amounts once paid by Defendants (since, once again, interest accrues from the date due *until* the date paid, or received).

By crediting Defendants' payments to the interest figure Plaintiff calculated the discussed earlier, Plaintiff is assessing interest on the withdrawal liability due each quarter *after* Plaintiff already received the money to satisfy that liability. Alternatively stated, Plaintiff's failure to credit Defendants' quarterly payment against the principal amount due that quarter causes the liability due that quarter to remain "unpaid" longer and results in interest charges to Defendants *after* the date they paid the liability (rather than *until*), in violation of the regulation.

Accordingly, Plaintiff is ordered to credit the payments it has received from Defendants to the principal amount due first, before crediting the payments to accrued interest.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for entry of judgment is DENIED. Plaintiff is given until July 3, 2006 to file an amended Motion for Entry of Judgment consistent with this opinion.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **June 9, 2006**