**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE WORKERS UNION (INDEPENDENT) PENSION FUND, and JACK STEWART, Trustee,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  04 C 7872** |
| **v.** | ) | |
| | ) | |
| **EL PASO CGP COMPANY, EL PASO MIDWEST COMPANY, EL PASO CNG COMPANY, LLC, and AMERICAN NATURAL RESOURCES COMPANY** | ) | **JUDGE DAVID H. COAR** |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

The Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent)

Pension Fund and its Trustee Jack Stewart (collectively "Plaintiff" or the "Fund"), filed this

action against Defendants El Paso CGP Company, El Paso Midwest Company, El Paso CNG

Company, LLC, and American Natural Resources Company (collectively "Defendants") to

collect withdrawal liability payments due under the Employment Retirement Income Security

Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendments of 1980

("MPPAA"), 29 U.S.C. §§ 1001-1461.  On May 13, 2008, the Seventh Circuit affirmed this

Court's ruling as to Defendants' liability but reversed the Court's damages judgment, remanding

the case to provide the parties with a full opportunity to be heard on the issue of damages.

*Chicago Truck Drivers Pension Fund v. El Paso CGP* ("*Chicago Truck Drivers*"), 525 F.3d 591

(7th Cir. 2008), *reh'g denied*, (7th Cir. 2008).  Presently before this Court is Plaintiff's motion

for summary judgment regarding damages. For the reasons stated below, Plaintiff's motion is GRANTED.

## BACKGROUND

### I. ERISA Overview

The Court begins with a brief exposition of the relevant law under the Employment Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendments of 1980 ("MPPAA"), 29 U.S.C. §§ 1001-1461. ERISA provides for multiemployer plans, which require contributions from more than one employer and are maintained pursuant to collective bargaining agreements between employers and employee organizations. 29 U.S.C. § 1301(a)(3). Employers who withdraw from multiemployer pension plans are subject to "withdrawal liability," which means that they must pay their share of "unfunded vested benefits" upon withdrawal. § 1381. Withdrawal liability is triggered by notice from the plan sponsor; "[a]s soon as practicable" after an employer's withdrawal, the sponsor must: (A) notify the employer of the amount of liability and the schedule for liability payment, and (B) demand payment. § 1399(b)(1). Once an employer receives this "notice and demand," it must begin making payments. *Chicago Truck Drivers*, 525 F.3d at 595. "The statute places a premium on prompt payment; it is a 'pay now, dispute later' scheme." *Id.* (citing *Robbins v. Pepsi-Cola Metro. Bottling Co.*, 800 F.2d 641, 642 (7th Cir. 1986) (per curiam)).

If an employer would like to contest a plan sponsor's assessment of its withdrawal liability, it must submit to arbitration. § 1401(a)(1). Once an employer receives "notice and demand" pursuant to § 1399(1), it has 90 days to request an informal review of the assessment,

§ 1399(b)(2)(A), and roughly 120 additional days to demand arbitration, § 1401(a)(1).  If an employer does not demand arbitration, its withdrawal liability "shall be due and owing on the schedule set forth by the plan sponsor."  § 1401(b)(1).

## II.      Relevant Facts

With this background in mind, the Court sets forth the facts relevant to the instant motion for summary judgment.  In 1998, ANR Advance Transportation Company ("ANR Advance") withdrew from the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund (the "Fund").  An involuntary Chapter 11 petition was subsequently filed against ANR Advance on February 2, 1999, and the case was converted into a Chapter 7 proceeding on March 3, 1999.  On June 3, 1999, the Fund filed a proof of claim for withdrawal liability in the ANR Advance bankruptcy.  The proof of claim was entitled, in part, "Determination of Withdrawal Liability Payment Schedule," and included two pages of calculations.  Section I listed the "withdrawal liability" as $1,747,610.00.  Section III, which was entitled "Payment Schedule," included several calculations, and listed, under the subheading "Total number of quarterly payments:" nine quarters at $185,989.00 and a final quarter at $181,200.54.  The proof of claim did not provide a date for the commencement of these payments.  When reciting the facts on appeal, the Seventh Circuit explained that "[t]he proof of claim referred to 'withdrawal liability,' stated the total amount of the assessment and carried a liability payment schedule, which broke the assessment down into ten installments."  *Chicago Truck Drivers*, 525 F.3d at 597.

When the proof of claim was filed, the bankruptcy proceeding was under Chapter 7, and the trustee responsible for administering the proceeding apparently never informed Defendants of the filing of the claim.  Over two years later, in late 2001, a lawyer for Defendants stumbled

upon the claim while performing due diligence in an unrelated matter. Defendants, however, did

not respond to the proof of claim at that time. As the Court of Appeals stated, "[t]hey chose to

sit on their hands." *Id.* at 597. So, too, did the Fund, which did not follow up for more than five

years after it initially filed its proof of claim in the Chapter 7 bankruptcy. Then, on November

18, 2004, the Fund sent Defendants letters that each contained a notice and demand for an

assessment of $1,747,610.00. The letters provided for payment either in a lump sum on or

before December 1, 2004, or in nine quarterly installments of $185,989.00 commencing on the

first day of each quarter beginning on December 1, 2004 and a final quarterly installment of

$181,200.54. Defendants did not pay the first installment until February 10, 2005. On February

15, 2005, Defendants requested review of the assessment, and on August 3, 2005, they

demanded arbitration.

On December 6, 2004, the Fund and its trustee, Jack Stewart, initiated this action to

collect withdrawal liability from Defendants. Resolving the parties' cross-motions for summary

judgment on the issue of liability, this Court granted the Fund's motion and denied Defendants'

motion on April 17, 2006. Shortly thereafter, the Fund moved for summary judgment on the

issue of damages. This Court denied the Fund's motion and, in a separate opinion, entered a

final judgment under a different theory of damages. On appeal, the Seventh Circuit affirmed this

Court's judgment on liability but reversed and remanded the case for further consideration on the

issue of damages.

### III.    The Seventh Circuit Appeal

A brief summary of the Seventh Circuit's analysis provides useful background for the

instant opinion. On appeal, the Seventh Circuit first reviewed and affirmed this Court's

judgment on withdrawal liability. To resolve the issue of withdrawal liability, the court analyzed

whether Defendants failed to make a timely demand for arbitration, thus rendering their withdrawal liability "due and owing" under § 1401(b)(1). Because a defendant's duty to arbitrate under § 1401(a)(1) is not triggered until it receives proper notice, the court's decision turned on the adequacy, as statutory notice and demand, of the proof of claim filed in bankruptcy on June 3, 1999. *See Chicago Truck Drivers*, 525 F.3d at 598. Defendants asserted that the only valid notice and demand was the Fund's November 18, 2004 letter, and they therefore made a timely demand for arbitration on August 3, 2005. The court agreed with the Fund, however, that Defendants acquired notice of the claim against them before they received the November 2004 letter, they failed to demand arbitration within the appropriate time period following their original notice, and they therefore waived their opportunity to contest their withdrawal liability. *See id.* at 600-01. Crucial to this result was the fact that Defendants had actual notice of the Fund's proof of claim no later than January 1, 2002, after Defendants' attorney discovered the claim while conducting due diligence in an unrelated matter. *Id.* The Court of Appeals held specifically that this actual notice trumped any deficiencies in the statutory notice and was sufficient to trigger Defendants' duty to arbitrate. *Id.* at 600. The court went on to chastise Defendants for their arguments that: (1) "'mere awareness' or 'mere possession' of the proof of claim does not amount to 'receipt,'" and (2) although they knew of the proof of claim, they did not know of its content. *Id.* at 600-01. Rejecting these arguments, the court stated: "These arguments partake of the meta-physical. The proof of claim clearly stated that it concerned withdrawal liability; the Defendants cannot stick their heads in the sand and later claim ignorance." *Id.* at 601.

After affirming this Court's decision on Defendants' liability, the Seventh Circuit reviewed the judgment on damages. Much of this discussion focused on whether Defendants'

withdrawal liability was "accelerated" under § 1399(c)(5) and therefore became immediately due when Defendants became aware of their indebtedness.  The Seventh Circuit held that this Court's damages judgment was improper because the parties did not have an adequate opportunity to present their arguments on the issue.  *Chicago Truck Drivers*, 525 F.3d at 603.  Specifically, because the Fund was not on notice that it might argue an entitlement to accelerate Defendants' debt under § 1399(c)(5), the Seventh Circuit directed that this Court now consider the Fund's argument for statutory acceleration.  *Id.* at 603-04.  Additionally, the Seventh Circuit noted that this Court's determination of liquidated damages depends upon a resolution of the acceleration issue.  *Id.* at 604.  Finally, the Court concluded that the federal common law rule known as the "United States Rule," which instructs that payments should be applied first to accrued interest and then to principal, applies in this case.  *Id.* at 604-05.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 252.

When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).  At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

The Fund currently moves for summary judgment on the issue of damages.  In withdrawal liability cases, damages include interest, liquidated damages, and attorney's fees and costs.  § 1132(g)(2).  Because the Fund rejects the Seventh Circuit's invitation to argue for acceleration, the Court's central task is to determine when Defendants' withdrawal liability was due—and calculate interest and liquidated damages accordingly.  The Court begins with the due date for Defendants' withdrawal liability payments.

### I.      Withdrawal Liability Due Date

The Fund argues that the first installment of Defendants' withdrawal liability was due on March 2, 2002.  To reach this date, the Fund relies on the Seventh Circuit's finding that notice and demand in this case was "received" by Defendants on January 1, 2002.  According to the Fund, because the schedule that accompanied the notice and demand did not provide a due date for the first installment payment, the due date must be determined pursuant to the MPPAA's default payment rule.  Section 1399(c)(2) of the MPPAA provides:

> Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.

The Fund therefore concludes that Defendants' first installment of withdrawal liability was due on March 2, 2002—60 days after the notice and demand was "received" by Defendants on January 1, 2002.

Defendants argue, in opposition, that their first installment payment was due on December 1, 2004, the date specified in the letter sent to Defendants on November 18, 2004. According to Defendants, this letter is the only document that established a schedule for payments in this case; Defendants insist that the proof of claim filed in bankruptcy did not contain a "schedule," and it therefore could not have triggered the MPPAA's provision for payment within 60 days of the date of the demand under § 1399(c)(2).

The parties' dispute as to whether the proof of claim included a schedule stems in part from disagreement as to how to read the Seventh Circuit's opinion. The Fund argues that the Seventh Circuit plainly decided that the proof of claim in this case included a schedule. To that end, the Fund points to the description of the proof of claim included in the facts section of the Seventh Circuit opinion: "[t]he proof of claim referred to 'withdrawal liability,' stated the total amount of the assessment and *carried a liability payment schedule*, which broke the assessment down into ten installments." *Chicago Truck Drivers*, 525 F.3d at 597 (emphasis added). Later, however, the Seventh Circuit observed that:

> The Fund's notice thus actually got 'to the employer,' and the statutory duty to arbitrate was triggered when the Defendants 'receive[d] the notice.' 29 U.S.C. § 1399(b)(2)(A). Nothing more is required if the notice and demand contains the necessary information, as this one did. Thus, actual notice trumps any deficiencies in it as statutory notice.

*Id.* at 600. Here, the court asserted that the notice and demand "contain[ed] the necessary information," which, by definition, includes a schedule for payments under § 1399(b)(1); yet, in the same breath, the court suggested that there may have been deficiencies in the statutory notice.

Based on earlier parts of the court's opinion, the deficiencies to which the court refers likely include the defective schedule. The court explained earlier that, because it is routinely "indulgent about the specific form a notice and demand may take," Defendants' argument that the proof of claim in this case did not contain a schedule was "beside the point." *Id.* at 598. This is because "[a] proof of claim filed in a bankruptcy need not contain a schedule of payment; such a schedule would be useless in that context, for the bankruptcy court can ultimately set its own schedule." *Id.* Considering these varying statements in the Seventh Circuit's opinion, it is not entirely clear whether the court held that the proof of claim in this case contained a schedule.

Despite the ambiguity in the Seventh Circuit's language, this Court finds that the Fund's proof of claim contained a "schedule" within the meaning of § 1399(c)(2), and the first installment was due 60 days after Defendants received the proof of claim on January 1, 2002. The proof of claim provided for the exact same lump sum or quarterly payments listed in the Fund's November 18, 2004 letter, which both parties admit contained a schedule; the only difference is that the proof of claim did not include a due date for Defendants' initial installment. However, as the Seventh Circuit recognized, the MPPAA provides for a default due date, 60 days after receipt of notice, if a schedule fails to specify such a date. § 1399(c)(2); *see Chicago Truck Drivers*, 525 F.3d at 598 n.2. The absent due date is therefore contemplated by and provided for in the statute, and no other defect prevents the Court from characterizing the proof of claim in this case as a schedule.

The Court's conclusion is entirely consistent with the spirit of the Seventh Circuit's decision and the statute itself. The Seventh Circuit already rejected Defendants' argument that the November 18, 2004 letter provided the only proper "notice and demand" for the purposes of determining that Defendants' request for arbitration was untimely; the court held that Defendants

received notice by January 1, 2002, at the latest, regardless of whether the proof of claim that

provided such notice contained a proper schedule. Criticizing Defendants' inaction despite their

awareness of withdrawal liability, the court stated that Defendants could not ignore the proof of

claim and wait to be sued rather than initiating the arbitration process. *See id.* at 600-01. This

reasoning applies equally, if not more persuasively, here. It is well-recognized that the MPPAA

establishes a "pay now, dispute later" scheme. *See id.* at 595; *see also Cent. States, Se., and Se.*

*Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1015 (7th Cir. 2001); *Robbins v. Pepsi-*

*Cola Metro. Bottling Co.*, 800 F.2d 641, 642 (7th Cir. 1986). Reinforced by mandatory awards

of interest, liquidated damages, and attorney's fees, the MPPAA aims to protect employers who

pay into multiemployer plans and to preserve the financial health of these plans. *See Cent.*

*States, Se. and Sw. Areas Pension Fund et al. v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1152-

53 (7th Cir. 1986) (en banc) (discussing Congress' intent in enacting the collection provisions of

ERISA). Requiring Defendants to begin making payments at the earliest point possible—60

days after they initially received notice of their liability on January 1, 2002—coheres with this

policy and aligns with the Seventh Circuit's decision on liability.

Moreover, given the structure of the statute, the only sensible conclusion is that the time

limits for initiating the arbitration process and commencing payments run from the same "notice

and demand." Both time limits are included within the same section of the statute, § 1399, which

is entitled "Notice, collection, etc., of withdrawal liability," and both time limit provisions

directly reference the "notice and demand" required under (b)(1) of the section. *See* § 1399(b)(2)

(providing 90 days for an employer to initiate the arbitration process by challenging the plan

sponsor's liability assessment); § 1399(c)(2) (providing an outer limit of 60 days for an employer

to commence payment of withdrawal liability). The Seventh Circuit has already decided that

Defendants received notice on January 1, 2002 for the purposes of initiating the arbitration process under § 1399(b)(2), and both the policies and structures of the statute counsel that the same date triggered Defendants' obligation to commence making payments under § 1399(c)(2). Accordingly, the first installment of Defendants' liability payments was due on March 2, 2002, 60 days after Defendants received notice of their withdrawal liability on January 1, 2002.

Defendants advance several other arguments to support their position that their liability payments were due on December 1, 2004, but all of these arguments fail. First, Defendants argue that the statutory rules for satisfying an employer's withdrawal liability are trumped by the rules adopted by the Fund in this case. Defendants specifically cite Section 5 of the Fund's rules, which provides that withdrawal liability payments are due only after the Fund *sends* a notice and demand to the employer. (Plaintiff's Rule 56.1 Statement of Material Facts ("PSOF"), Joint Ex. 2, Fund's Withdrawal Liability Rules, § 5.) According to Defendants, because the only notice *sent* to them was the November 18, 2004 letter, their withdrawal liability payments were due according to the schedule accompanying that letter. Consistent with the theme of this opinion, the Court rejects Defendants' argument as overly formalistic and at odds with the statutory scheme of the MPPAA, which encourages prompt payment of withdrawal liability. *See, e.g.*, *Chicago Truck Drivers*, 525 F.3d at 595 (citing *Robbins*, 800 F.2d at 642). Even if Defendants' interpretation of the Fund's rule was accurate, it would be void to the extent that it conflicts with the MPPAA. § 1399(c)(7) ("A multiemployer plan may adopt rules for other terms and conditions for the satisfaction of an employer's withdrawal liability if such rules (A) are consistent with this chapter.") Section 1399(c)(2) establishes that an employer must commence payment of withdrawal liability "no later than 60 days after the date of demand,"

§ 1399(c)(2), which was received on January 1, 2002. If the Fund's rule provided for a later

payment date, as Defendants contend, it would be inconsistent with § 1399(c)(2) and therefore

unenforceable.

Defendants next argue that, if the proof of claim was a schedule for payments, it was

superseded by the schedule accompanying the Fund's November 18, 2004 letter. This argument

suffers two fatal flaws. First, it conflicts with the Seventh Circuit's decision that the January 1,

2002 notice and demand controls in this case, triggering the statute's deadlines. Second, neither

case cited by Defendants supports its position. *See Trustees of Tampa Maritime Ass'n-Int'l*

*Longshoremen's Ass'n Pension Plan and Trust v. S.E.L. Maduro (Florida), Inc.*, 849

F.Supp.1535, 1538-39 (M.D. Fla. 1994) (holding that a later schedule controls where it

accompanies a new assessment based on a later withdrawal date); *Robbins v. Pepsi-Cola Metro.*

*Bottling Co.*, 636 F.Supp. 641, 681-82, 684 (N.D. Ill. 1986) (ordering a revision of the fund's

assessment but holding that defendant's obligation to make withdrawal liability payments began

when it received the first notice and accompanying assessment of liability). As the Fund points

out, the *Pepsi* case actually supports its position; even though there was a change in the amount

of the assessment, unlike in this case, the defendant's payment obligations still began when it

first received notice of its withdrawal liability.

Defendants' next argument, that the Fund is estopped from seeking damages based on the

March 2, 2002 due date, also fails. Defendants argue specifically that the Fund is barred from

asserting this position because, earlier in this litigation, the Fund sought and obtained relief based

on the dates called for in the November 18, 2004 letter. The doctrine of judicial estoppel is

"intended to prevent the perversion of the judicial process" by prohibiting a party who has

obtained judicial relief on one basis from later seeking relief on an inconsistent basis. *In re*

*Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990).  "Where a party assumes a certain position in a legal

proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his

interests have changed, assume a contrary position."  *Id.* (quoting *Davis v. Wakelee*, 156 U.S.

680, 689 (1895)) (internal quotation marks omitted).

Before considering the factors that inform a court's decision to apply the judicial estoppel

doctrine, the Court notes that the doctrine fits poorly with this case in general.  Earlier in this

litigation, the Fund sought damages based on the payment schedule in the November 18, 2004

letter because the Court instructed it to do so.  At the Court's direction, the Fund filed an

amended motion for entry of judgment that conformed to the Court's June 9, 2006 order, which

considered the November 18, 2004 letter the only relevant schedule of payments.  The Fund

merely followed this Court's order and now follows the Seventh Circuit's directive to assert an

argument for damages consistent with its decision on appeal.  This is not a case where the Court

requires protection against a party "playing fast and loose" with it.  *See In re Cassidy*, 892 F.2d

at  641 (the doctrine "is to be applied where 'intentional self-contradiction is being used as a

means of obtaining unfair advantage in a forum designed for suiters seeking justice, to prevent

litigations from 'playing fast and loose with the courts.') (quoting *Scarano v. Cent. R. Co.*, 203

F.2d 510, 513 (3d Cir. 1953) (internal citation omitted).

None of the factors that typically support the doctrine's application exist in this case

either.  *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).  "First, a party's later

position must be 'clearly inconsistent' with its earlier position."  *Id.* at 750.  Throughout this

litigation, the Fund has argued that the 1999 proof of claim served as notice to Defendants and

triggered their withdrawal liability; the Fund has consistently maintained this position and only

diverged from this position at the direction of the Court.  "Second, courts regularly inquire

- 13 -

whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would 'create the perception that either the first or the second court was misled.'" *Id.* (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)). This factor underscores the poor fit of the judicial estoppel doctrine with this case; normally the doctrine applies where a party asserts different positions in two separate cases, not two phases of the same proceeding. In any event, this factor militates against applying the doctrine here, as the Fund did not persuade the Court to adopt its position but, rather, asserted an argument consistent with the Court's earlier order. There is no danger of creating a perception that the Court has been misled in any part of this litigation. Finally, "[a] third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Maine*, 532 U.S. at 751. Defendants have not suggested that they would suffer any disadvantage if the Fund is not estopped, and the Court cannot conceive of any such disadvantage. Indeed, the Court agrees with the Fund that it is difficult to imagine what it could have done differently. Because neither the policies nor factors supporting judicial estoppel exist in this case, the Court rejects Defendants' invocation of this doctrine.

The Court finds that Defendants' withdrawal liability payments were due beginning on March 2, 2002.

### II.    Liquidated Damages

The MPPAA imposes liquidated damages of 20% of the amount of any delinquent debts, § 1132(g)(2), as "a penalty for trying to litigate before paying rather than paying upon assessment and litigating to get the payments refunded." *Cent. States, Se. and Sw. Areas Pension Fund et al. v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339, 1347 (7th Cir. 1992). As the first

payment in this case was due March 2002, all of the ten quarterly payments became delinquent

by June 2004, well before Defendants made their first payment on February 10, 2005. Thus, the

amount of liquidated damages due is 20% of each of these delinquent payments (nine

installments of $185,989.00 plus one installment of $181,200.54, for a total of $1,855,101.54).

Twenty percent of the total delinquent payments is $371,020.31. (PSOF, Ex. 7.)

### III.    Payments Apply First to Interest

Because Defendants made interim payments to the Fund during the course of this

litigation, the Court must determine whether those payments apply first to the principal or

accrued interest. This Court rejects Defendants' position that the payments must be applied first

to the principal because of the Seventh Circuit's clear holding to the contrary. Under the "United

States Rule," which the Seventh Circuit found applicable in this case, payment is applied first to

accrued interest, "absent a clearly expressed intention by the parties to allocate payments in some

other way." *Chicago Truck Drivers*, 525 F.3d at 604 (quoting *S. Natural Gas Co. v. Pursue

Energy*, 781 F.2d 1079, 1088 n.11 (5th Cir. 1986)) (internal quotation marks omitted). The

Seventh Circuit found no clearly expressed agreement to another allocation, and Defendants

have presented no evidence that supports such an agreement.[1] In accordance with the Seventh

Circuit's holding, the United States Rule, which "encourages employers to pay the balance in

---

[1] The provision of the Fund's rules that Defendants claim expresses a clear intention to reject the United States Rule neither mentions the Rule nor addresses how payments should be allocated. This provision states:

> In addition to any other remedies to which the Fund may be entitled, an Employer shall be obligated to pay interest on the amounts due to the Fund from the date when the payment was due to the date when the payment is made. . . . Any judgment against an Employer for contributions or withdrawal liability payments owed to this Fund or to enforce an arbitrator's award shall include by mandate of the court the greater of (a) double the interest computed and charged in accordance with this section or (b) liquidated damages based on the unpaid contributions or withdrawal liability payments only (exclusive of interest) in the amount of 20% in accordance with ERISA Section 502(g)(2)(C), as amended by the 1980 Act.

(PSOF, Joint Ex. 2, Fund's Withdrawal Liability Rules, § 5(d)(IV)(B).)

full, and [] comports with the remedial goals of the statute," applies in this case. *Chicago Truck Drivers*, 525 F.3d at 605.

After attributing payments to interest first, the remaining principal due amounts to $179,991.88. (PSOF ¶ 13.) Pursuant to the Fund's Withdrawal Liability Rules, interest on delinquent payments is charged at the prime interest rate reported by the *Wall Street Journal* for the fifteenth day of the month for which the interest is charged. (PSOF ¶¶ 13, 14; Joint Ex. 2, Fund's Withdrawal Liability Rules, § 5(d)(IV)(B).) As of the date the Fund's motion was filed, October 10, 2008, the interest due was $20,470.77. (PSOF ¶ 14.) Defendants therefore owe the Fund $20,470.77, in addition to interest accrued from the date this motion was filed through the date Defendants pay the Fund the remaining principal. This interest should be calculated pursuant to the Fund's rules for calculating interest on delinquent payments, as captured by § 5(d)(IV)(B) of the Fund's Withdrawal Liability Rules.

## IV. Attorney's Fees and Costs

The parties have previously agreed on an award of $642,242.75 for attorney's fees and costs. (R. 270.) That sum is included in this Court's judgment, and the remaining fees must be calculated pursuant to the local rules.

## CONCLUSION

For the reasons stated above, the Fund's motion for summary judgment on damages is GRANTED. The Court finds that Defendants owe the Fund $179,991.88 in principal, $20,470.77 in interest, plus interest accrued between the date this motion was filed and the date Defendants pay the remaining principal,[2] $371,020.31 in liquidated damages, and $642,242.75 in

---

[2] As discussed above, interest on delinquent payments is charged at the prime interest rate reported by the *Wall Street Journal* for the fifteenth day of the month for which the interest is charged, pursuant to the Fund's Withdrawal Liability Rules, § 5(d)(IV)(B).

attorney's fees.  Accordingly, judgment is entered in favor of the Fund in the amount of

$1,213,725.71 plus interest.

<div style="margin-left:45%">

Enter:
/s/ David H. Coar

_____

David H. Coar
United States District Judge

</div>

**Dated:** January 20, 2010